STATE OF NORTH CAROLINA v. THOMAS GORDON WHITE

No. 65

(Filed 6 November 1979)

**1. Criminal Law §§ 96, 99.1— court's erroneous remarks to prospective jurors about death penalty—curative instructions**

Defendant was not prejudiced by the trial court's erroneous instruction to prospective jurors that defendant could receive the death penalty if he was convicted of first degree murder where the court thereafter instructed the prospective jurors that there was no death penalty in North Carolina at the time the alleged offense occurred, that the death penalty would be of no consideration in the case, and that they should disregard the court's previous remarks about the death penalty.

**2. Homicide § 20.1— photograph of deceased's body**

A photograph of deceased's decomposed body as it was found lying in a stream, face up, was properly admitted for the purpose of illustrating an officer's testimony as to the location and position of the body and how it was clothed when found.

**3. Criminal Law § 75— admissibility of in-custody statements**

Defendant's in-custody statements to an officer were properly admitted in evidence where the trial court found upon supporting voir dire evidence that defendant was properly advised of his *Miranda* rights; defendant knowingly and intelligently waived his right to have counsel present during questioning; and defendant's statements to the officer were understandingly and voluntarily made without duress, coercion or inducement of any kind.

**4. Criminal Law § 73.2— telephone call—testimony not hearsay**

An officer's testimony that the county sheriff's department received a telephone call from a female on a certain date that she had seen a vehicle down an embankment with its nose in a river was not inadmissible as hearsay where the testimony was not offered to prove the truth of the matter asserted but was offered to explain the officer's subsequent conduct.

**5. Criminal Law § 73.1— hearsay as harmless error**

The trial court in a homicide case erred in admitting a witness's hearsay testimony that his wife told him that the name of the person he saw and talked with at a pond on a certain date was Tommy White, the defendant; however, such error was not prejudicial where the witness had already identified defendant as the man he had seen and talked with on the occasion in question.

**6. Criminal Law § 87.1— leading questions of own witness**

The trial court did not err in permitting the district attorney to ask leading questions of his own witness.

**7. Criminal Law § 111.1— instruction that all evidence is important**

> The trial court did not err in instructing the jury that ". . . all the evidence is important."

**8. Criminal Law § 113.1— adequacy of summary of witness's testimony**

> There is no merit in defendant's contention that the trial court inade-quately summarized the testimony of a State's witness because the court sum-marized only those parts of the testimony which were favorable to the State and did not include parts showing the incredibility of the witness's testimony.

APPEAL by defendant from *Martin (John C.), J.,* 22 January 1979 Session Superior Court ALAMANCE County.

Upon a plea of not guilty defendant was tried on a bill of in-dictment charging him with the murder of Horace Mitchell Payne. Evidence prsented by the state is summarized in pertinent part as follows:

On 6 June 1977 Mitchell Payne was reported missing, he hav-ing been seen last on 28 May 1977. On 8 June 1977 his Pontiac automobile was found in the Haw River. On the following day, after an extensive search, his body was found in a small stream in a remote area of the Payne farm in southern Alamance County. The body was lying face up with fresh water running over it.

An autopsy performed the next day revealed that Payne had died from fresh water drowning; that he had been dead for at least a week; and that he was under the influence of intoxicants at the time of his death.

Julius Alston, defendant's cousin, testified that on a night late in May in 1977 defendant came to his home in Alamance County; that a young girl, Gayle Poole, was with defendant; that defendant was driving a 1968 or 1969 Pontiac; that defendant told him that he had killed Mitchell Payne; that defendant thereafter drove the Pontiac into the river; that several days later he went fishing with defendant in a pond on the Payne farm; that while there, defendant said he was going to see if Payne's body was still where he left it; and that after defendant had been gone from the pond a short while, he returned and stated that the body was where he had left it.

On 23 August 1978 defendant was being held in the Orange County Jail on other charges. While there he was questioned by

Lt. Qualls of the Alamance County Sheriff's Department. After being advised of his *Miranda* rights and executing a document waiving his right to the presence of counsel, defendant made statements briefly summarized as follows:

In May of 1977 he was being sought by police for stealing a truck. He was very familiar with the Payne farm because he grew up on it. Accompanied by Gayle Poole, he set up a tent in a wooded area of the farm and they camped there for about a week or more. After they had been there for several days, Mitchell Payne, whom he knew, drove up nearby and found them. Payne had a considerable amount of beer with him and he and Payne began drinking. Payne became drunk and began making insulting remarks about defendant's mother, referring to her as a s.o.b. This and other remarks by Payne made defendant mad and he pushed Payne. Payne fell and his head struck a rock causing him to become unconscious. He tried to drag Payne up the hill to the automobile for purpose of carrying him to a doctor but Payne was too heavy. Thereupon he dragged Payne down the hill to the little stream and placed him in it.

Defendant offered no evidence.

The court submitted the case to the jury on first-degree murder, second-degree murder, voluntary manslaughter and not guilty. The jury returned a verdict finding defendant guilty of second-degree murder and from judgment imposing a life sentence, he appealed.

*Attorney General Rufus L. Edmisten, by Associate Attorney Christopher P. Brewer, for the State.*

*Daniel H. Monroe and W. O. Shue for defendant-appellant.*

BRITT, Justice.

[1] By his first assignment of error, defendant contends the trial court committed reversible error by instructing prospective jurors that he was charged with first-degree murder and that, if he was found guilty, he could receive the death penalty, when in fact the death penalty was not applicable to this case. This assignment has no merit.

When this case was called for trial, the court instructed the prospective jurors that defendant was charged with murder in the first degree; and that if he was convicted of that charge the court would then conduct a separate sentencing proceeding to determine if the sentence would be death or life imprisonment. After a conference at the bench with counsel, the court then instructed the prospective jurors that his statement that defendant's punishment might be death was erroneous; that the alleged offense occurred on 28 May 1977 and at that time there was no death penalty in effect in North Carolina; that the death penalty would be of no consideration in this case; and that they would disregard the previous remarks of the court about the death penalty.

Defendant argues that the erroneous instruction had the effect of emphasizing that the charge against defendant was very serious; that this prejudiced defendant in the eyes of the jury; and that the prejudice could not be removed by curative instructions. This argument is not persuasive.

While counsel has not cited, and we have not found, precedent directly in point with the question raised, we think a valid analogy can be drawn from other situations in which curative instructions are held to be sufficient to overcome error.

In 4 Strong's N.C. Index, Criminal Law § 96, we find: "Where the court properly withdraws incompetent evidence from the consideration of the jury and instructs the jury not to consider it, error in its admission is cured in all but exceptional circumstances, and there is a presumption on appeal that the jury followed such instruction unless prejudice appears or is shown by appellant. . . ." In like manner, a trial judge by appropriate instructions may correct an erroneous recapitulation of the evidence or a misstatement of the contentions of the parties. *Id.* § 113.9.

With respect to curative instructions, this court in *State v. Siler*, 292 N.C. 543, 234 S.E. 2d 733 (1977), said:

> "Ordinarily, where objectionable evidence is withdrawn and the jury instructed not to consider it no error is committed because under our system of trial by jury we assume that jurors are people of character and sufficient intelligence to fully understand and comply with the court's instructions and they are presumed to have done so. (Citations.)"

Defendant's reliance upon *State v. Manning*, 251 N.C. 1, 110 S.E. 2d 474 (1959), is misplaced. In that case, the solicitor, in passing on the jury, commented: ". . . as far as the State is concerned, the sole purpose of this trial is to send the defendant . . . to his death in the gas chamber. . . ." The jury in *Manning* found defendant guilty of first-degree murder without a recommendation of mercy. This court granted a new trial on the ground that the remarks of the solicitor were inflammatory and prejudicial to the defendant and that the curative instructions of the presiding judge were not sufficient to erase the prejudice. It is clear that the statements of the trial judge in this case do not compare with the vicious remarks of the solicitor in *Manning*. The remarks in *Manning* were calculated not to inform the jury of the role they were to play in the trial but were, instead, directed at prejudicing defendant's right to an unbiased jury. This is to be contrasted with the present case. The remarks of the trial judge were in no way inflammatory. Rather, it is apparent that they were designed and delivered so as to educate members of the jury as to the nature of the proceeding in which they were then engaged. Furthermore, since Manning received the death penalty, every error in his trial was subject to close scrutiny. In the present case, however, defendant was not even convicted of first-degree murder but of the lesser included offense of second-degree murder.

[2] By his second assignment of error, defendant contends that the trial court erred by allowing the state to introduce into evidence a photograph of the body of the deceased. This assignment has no merit.

During the testimony of Officer Thomas R. Overman, the state offered into evidence a photograph which depicted the body of decedent as it was found in a stream, face up. Before the district attorney offered the photograph into evidence, Officer Overman testified that it "fairly and accurately" depicted the scene as he found it to be on 9 June 1977. Counsel for defendant objected. After conducting a *voir dire*, the trial judge overruled the objection. Before the photograph was passed among the jury, the court instructed the jury that:

> [T]he photograph is admitted into evidence for the sole purpose of illustrating the witness' testimony if the jury

finds that it does. Members of the jury, you will remember the instructions concerning the use of the photograph and you will not use it as substantive evidence in the case, but may use it only as you find that it does illustrate this witness' testimony.

If a photograph is relevant and material, the fact that it is gory or gruesome will not, by itself, render it inadmissible. *State v. Dollar*, 292 N.C. 344, 233 S.E. 2d 521 (1977); *State v. Miley*, 291 N.C. 431, 230 S.E. 2d 537 (1976); *State v. Hunter*, 290 N.C. 556, 227 S.E. 2d 535 (1976), *cert. denied*, 429 U.S. 1093, 51 L.Ed. 2d 539, 97 S.Ct. 1106 (1977). *See generally* 1 Stansbury's North Carolina Evidence § 34 (Brandis Rev. 1973). It is unquestioned that the photograph in this case was gruesome. It depicted the body of Payne in an advanced state of decomposition. The photograph was offered into evidence during the direct examination of Officer Overman, one of the officers who had been called to the scene after the body had been discovered. At the time of the offer, Officer Overman had just completed testifying as to the location and position of the body when it was found as well as how it was clothed. The photograph was properly authenticated. When it was received into evidence but before it was passed among the jurors, the trial judge gave an appropriate limiting instruction to the jury as to the manner in which they might consider the photograph. We perceive no error.

[3] By his third assignment of error, defendant contends that the trial court committed prejudicial error by admitting into evidence a statement which defendant gave to Lieutenant Daniel Qualls of the Alamance County Sheriff's Department. This assignment is without merit.

On 23 August 1978 defendant was being held in the Orange County Jail on charges which were unrelated to the death of Payne. After Lieutenant Qualls informed defendant of his *Miranda* rights, he executed a written waiver of rights. During questioning by Officer Qualls, defendant stated that he pushed Payne; that Payne fell and hit his head on a rock; that Payne was knocked unconscious; and that after Payne became unconscious, he dragged the body to a nearby creek where he left it. When Lieutenant Qualls began testifying on direct examination about the interrogation of defendant, defense counsel objected. After

conducting a *voir dire*, the trial judge found as a fact that defendant was properly advised of his *Miranda* rights; that he knowingly and intelligently waived his right to have counsel present during questioning; and that the statements which defendant gave to the officer were understandingly and voluntarily made without duress, coercion, or inducement of any kind. The trial judge ruled that the statements were admissible and overruled defendant's objection.

When the state offers in evidence a defendant's in-custody statements made in response to police interrogation conducted in the absence of counsel, the state must affirmatively show not only that the defendant was fully informed of his rights but also that he knowingly and intelligently waived his right to counsel. *State v. Siler*, 292 N.C. 543, 234 S.E. 2d 733 (1977); *State v. Biggs*, 289 N.C. 522, 223 S.E. 2d 371 (1976); *State v. White*, 288 N.C. 44, 215 S.E. 2d 557 (1975). A failure on the part of an accused to request the presence of counsel does not, by itself, constitute a waiver. *Miranda v. Arizona*, 384 U.S. 436, 16 L.Ed. 2d 694, 86 S.Ct. 1602 (1966); *State v. Thacker*, 281 N.C. 447, 189 S.E. 2d 145 (1972); *State v. Blackmon*, 280 N.C. 42, 185 S.E. 2d 123 (1971). A valid waiver will not be presumed from the mere silence of the accused or the fact that a confession was eventually obtained. *Miranda v. Arizona, supra* at 475, 16 L.Ed. 2d at 724, 86 S.Ct. at 1628. *See also, State v. Connley*, --- U.S. ---, 60 L.Ed. 2d 657, 99 S.Ct. 2046 (1979), *reversing State v. Connley*, 295 N.C. 327, 245 S.E. 2d 663 (1978); and *State v. Butler*, --- U.S. ---, 60 L.Ed. 2d 286, 99 S.Ct. 1755 (1979), *reversing State v. Butler*, 295 N.C. 250, 244 S.E. 2d 410 (1978).

Upon defendant's objection to the admissibility of an incriminating statement made while in custody, the court must conduct a *voir dire* hearing to ascertain whether the incriminating statement was voluntarily made after the defendant was apprised of and had waived his constitutional rights, and the admission into evidence of any such statement without a hearing is prejudicial error. *State v. Riddick*, 291 N.C. 399, 230 S.E. 2d 506 (1976). At the conclusion of the hearing, the trial judge should make findings of fact setting out the basis of his ruling. *State v. Richardson*, 295 N.C. 309, 245 S.E. 2d 754 (1978). Where the trial judge finds upon competent evidence that defendant's statements were made freely and voluntarily after having been fully advised

of his constitutional rights, such a finding is conclusive and will not be disturbed on appeal. *State v. Harris*, 290 N.C. 681, 228 S.E. 2d 437 (1976).

On *voir dire*, Officer Qualls testified that at about 6:00 p.m. on 23 August 1978 he met with defendant in the detective's room at the Orange County Sheriff's Department for the purpose of investigating the possible involvement of defendant in the death of Horace Mitchell Payne; that he read to defendant a waiver of rights form; that he explained each of the rights to defendant; that defendant signed the waiver form; that defendant was not in any way coerced or threatened; and that defendant was not deprived of anything during the interrogation. No evidence was presented at the *voir dire* other than the testimony of Officer Qualls. The evidence was competent to establish the voluntariness of defendant's conduct in talking with the officer. We find no basis upon which to disturb the findings of the trial court.

By his fourth assignment of error, defendant contends that the trial court erred by allowing the state to introduce hearsay testimony on two occasions. This assignment has no merit. We will briefly discuss each instance separately.

[4] In the first instance, defendant argues that the trial court erred in allowing the state to introduce the testimony of Officer Qualls that the Alamance County Sheriff's Department received a telephone call from a female on 7 June 1978 that she had seen a vehicle down an embankment with its nose in the water of the Haw River below Saxapahaw, North Carolina. Defense counsel objected and the objection was overruled. The court instructed the jury that the testimony of Officer Qualls as to what the phone call had been about was not to be considered by them as proof of any facts but only as tending to explain his conduct upon hearing it.

If a statement is offered for any purpose other than that of proving the truth of the matter asserted, it is not objectionable as hearsay. *State v. Irick*, 291 N.C. 480, 231 S.E. 2d 833 (1977); *State v. Caddell*, 287 N.C. 266, 215 S.E. 2d 348 (1975); *State v. Crump*, 277 N.C. 573, 178 S.E. 2d 366 (1971); *see generally* 1 Stansbury's North Carolina Evidence § 141 (Brandis Rev. 1973). The statements of one person to another are admissible to explain the subsequent conduct of the person to whom the statement was made. *State v. Potter*, 295 N.C. 126, 244 S.E. 2d 397 (1978); *State*

*v. Irick, supra; State v. Sauls*, 291 N.C. 253, 230 S.E. 2d 390 (1976), *cert. denied*, 431 U.S. 916, 53 L.Ed. 2d 226, 97 S.Ct. 2178 (1977).

The limiting instruction which was given by the trial judge was correct and appropriate. The testimony of Officer Qualls about the phone call and its contents was competent as tending to explain his subsequent conduct. It was not offered to prove the truth of the matter asserted, i.e. the location and position of a particular truck.

[5]   In the second instance, defendant argues that the trial court erred in allowing the state, over objection, to introduce evidence concerning the identity of defendant. Allen Waterson testified for the state. In his testimony he said that on 2 June 1977 he and his wife saw defendant at the pond on the Payne farm; that he got out of his car and walked toward the man he recognized as defendant; that the man answered to the name "Tommy"; that he asked defendant if he had seen Payne; that defendant said he had not seen Payne; and that he asked defendant to let him know if he saw Payne. On redirect examination of Mr. Waterson, the following exchange took place.

Q. Mr. Waterson, who was with you when you saw this man over here, this defendant, that day at the pond down there?

A. My wife.

Q. And is she present in this courtroom?

A. Yes, sir.

Q. Did she tell you who he is?

MR. SHUE: Well, objection.

COURT: Overruled.

          *     *     *     *     *     *

A. Yes.

Q. And who did your wife say this man over there, the defendant in this case, his name?

A. Tommy White.

Q. Thank you.

This exchange did elicit hearsay testimony as to the identity of the individual the witness saw at the pond on 2 June 1977. However, we are unable to say that the error was prejudicial to the rights of defendant. Before a new trial will be awarded for the erroneous admission of evidence, "the appellant must show error positive and tangible, that has affected his rights substantially and not merely theoretically, and that a different result would likely have ensued." *State v. Cross*, 284 N.C. 174, 200 S.E. 2d 27 (1973), quoting *State v. Cogdale*, 227 N.C. 59, 40 S.E. 2d 467 (1946). Appellant has failed to carry this burden. The witness had already identified defendant as being the man he had seen and talked with on 2 June 1977 at the pond. While it is true that the witness would not have known the name of the individual had it not been for what his wife had told him, there was a sufficient independent basis for the identification of defendant other than that provided in the testimony which was objected to by defendant to overcome any allegation of prejudice.

[6] Defendant contends that the trial court erred in allowing the district attorney to ask leading questions of his own witness, Julius Wayne Alston. There was no error.

A witness may be interrogated by leading questions when the witness appears to have exhausted his memory without stating the matter required or has trouble understanding the question posed as evidenced by unresponsive answers. *State v. Hopkins*, 296 N.C. 673, 252 S.E. 2d 755 (1979); *State v. Greene*, 285 N.C. 482, 206 S.E. 2d 229 (1974). Rulings of the trial judge on the use of leading questions are discretionary; and he is reversible only for an abuse of discretion. *State v. Hopkins, supra*; *State v. Harris*, 290 N.C. 681, 228 S.E. 2d 437 (1976); *State v. Greene, supra*. We do not perceive there to have been an abuse of discretion in this case.

[7] By his seventh assignment of error, defendant contends that the trial judge committed error by instructing the jury in his charge ". . . all the evidence is important." Defendant argues that this is an incorrect statement of the law in that it is for the jury to decide what is important. This assignment is without merit.

We do not find the instruction given in this case to differ significantly from that approved in *State v. McClain*, 282 N.C. 396, 193 S.E. 2d 113 (1972), where Justice Lake observed "The

trial judge correctly instructed the jury: 'It is your duty to remember and consider all of the evidence whether called to your attention by counsel or the Court or not, for all of the evidence is important.' " *State v. McClain, supra* at 400.

Once it is established that proffered evidence is competent, that evidence is entitled to be submitted to the jury for its due consideration in light of all the other evidence brought forward at trial. However, the jury remains the final arbiter of the credibility. Probative force and weight which is to be accorded to the evidence which it considers. *See generally* 1 Stansbury's North Carolina Evidence § 8 (Brandis Rev. 1973).

[8] By his eighth assignment of error, defendant contends the trial court erred in his charge to the jury in summarizing the testimony of Julius Wayne Alston, a witness for the state. Defendant argues that the judge summarized only those parts of Alston's testimony which were favorable to the state in that "[T]he summarization of the testimony of Alston by the Court simply does not reflect the incredibility of his testimony." There was no error.

It is fundamental that a trial judge may not by words or conduct suggest an opinion as to the weight of evidence or the credibility of a witness. G.S. 15A-1222; *see e.g., State v. Frazier,* 280 N.C. 181, 185 S.E. 2d 652 (1972); *State v. Maready,* 269 N.C. 750, 153 S.E. 2d 483 (1967). After reviewing the judge's charge and construing it contextually, we do not find the charge to have been inadequate. When a court undertakes to restate the contentions of the parties, it must fairly present the contentions of both parties without giving undue stress to those of either side. *State v. Hewett,* 295 N.C. 640, 247 S.E. 2d 886 (1978); *State v. Cook,* 273 N.C. 377, 160 S.E. 2d 49 (1968). It is sufficient if the contentions are restated with reasonable accuracy. *State v. Gaines,* 283 N.C. 33, 194 S.E. 2d 839 (1973). Any minor discrepancies or misstatements in the charge must be brought to the attention of the judge at trial. *State v. Monk,* 291 N.C. 37, 229 S.E. 2d 163 (1976); *State v. Davis,* 291 N.C. 1, 229 S.E. 2d 285 (1976).

Defendant contends that the trial court erred in denying his motions to dismiss at the close of the state's evidence and to set aside the verdict as being contrary to the weight of evidence. There was no error. The state presented sufficient evidence to

send the case to the jury on the issue of defendant's guilt as well as to support the jury's verdict.

We conclude that the defendant received a fair trial, free from prejudicial error.

No error.