EDWARD F. McNINCH, Employee, Plaintiff, v. HENREDON INDUSTRIES, INC., Employer, Self-Insured, Defendant

No. 8010IC560

(Filed 7 April 1981)

1. **Master and Servant § 93.2– workers' compensation – testimony as to intent – competency to show action within course of employment**

In a workers' compensation proceeding to recover for injuries received by plaintiff while he was driving a truck as an assistant to defendant employer's regularly dispatched driver on an out-of-state trip to deliver furniture, testimony by the regularly dispatched driver that he intended to comply with defendant employer's regulations relating to carrying an unauthorized person in his truck in an emergency situation was competent on the question of whether plaintiff was acting within the course of his employment at the time of the accident.

2. **Master and Servant § 94– workers' compensation – sufficiency of evidence to support findings**

In a workers' compensation proceeding to recover for injuries received by plaintiff while he was driving a truck as an assistant to defendant employer's regularly dispatched driver on an out-of-state trip to deliver furniture, the evidence supported findings by the Industrial Commission that time was of the essence for delivering the furniture, that the regularly dispatched driver requested assistance from plaintiff so that the shipment would be timely delivered, and that plaintiff's rendering of assistance to the regularly dispatched driver would have made possible the timely delivery of the furniture to defendant employer's benefit.

3. **Master and Servant § 55.6– workers' compensation — rendering assistance to regularly dispatched driver – injuries within course of employment**

The evidence supported a determination by the Industrial Commission that plaintiff truck driver was acting within the course of his employment at the time he was injured in an accident while driving a truck as an assistant to defendant employer's regularly dispatched driver on a trip to Detroit to deliver furniture where it showed that plaintiff was employed as a truck driver by defendant employer; the driver who was assigned the Detroit trip reinjured his back while hooking up the trailer in preparation for the trip and felt that he would be unable to make the fourteen-hour trip and unload the truck alone; the regular driver asked a clerk in the shipping department to contact the dispatcher or to find another driver to go in his place, but the clerk was unable to do so; the regular driver knew that time was of the essence for delivering the furniture, that he had to arrive in Detroit no later than 7 a.m. on the next morning or the furniture would be refused until the following Monday morning, and that he would have to leave the terminal by 5 p.m. in order to make the trip by 7 a.m. the next morning; the regular driver requested that plaintiff assist him so that the furniture would be timely delivered; plaintiff agreed to assist the regular driver in return for an agreement by the regular driver to split his pay with the plaintiff and to drop plaintiff off in West Virginia on the way home so that plaintiff could pick up a

McNinch v. Henredon Industries

car; plaintiff and the regular driver left on the trip sometime after 5 p.m., and both plaintiff and the regular driver thought that they could make the trip within the required time; regulations of defendant employer forbade its drivers from carrying unauthorized passengers on hauls except in an emergency, and when a driver made such an exception he was required to turn in information regarding the surrounding circumstances to defendant employer at the conclusion of the trip; the regular driver intended to notify defendant employer that plaintiff had accompanied him on the trip upon his return from Detroit; and plaintiff was injured in an accident which occurred while plaintiff was driving the truck while following the usual route to Detroit, since the evidence was sufficient to support a determination that an emergency situation contemplated by defendant employer's regulations existed and that defendant employer implicitly authorized the haul in the manner in which it was carried out.

APPEAL by defendant from the opinion and award of the full Commission of the North Carolina Industrial Commission. Opinion and award entered 17 December 1979. Heard in the Court of Appeals 23 January 1981.

Plaintiff's case was heard by Dianne C. Sellers, Deputy Commissioner of the North Carolina Industrial Commission, on 13 March 1979. Both plaintiff and defendant put on evidence. The deputy commissioner made an award to plaintiff, and in her opinion made findings of fact. Those pertinent to this appeal are set out herein.

1. Plaintiff was hired by the defendant-employer as a long distance truck driver who hauled furniture and who had been so employed for 2½ to 3 years prior to October 6, 1977, on which date early in the morning plaintiff had just returned from a trip to Florida.

2. Thomas Wyatt, also a truck driver for the defendant-employer, was preparing in the late afternoon of October 6, 1977 for a 14-hour trip to Detroit. He had to leave by 5 p.m. in order to be able to deliver furniture by 7 a.m. on the following morning of October 7, 1977.

3. Eight weeks prior to this occasion, Wyatt had undergone back surgery, and on this particular afternoon at approximately 4:30 or 4:45 while preparing for the trip, he slipped as he was hooking a trailer which caused his back to hurt severely.

4. Wyatt went to the clerk in the shipping department from whom he obtained the bill of lading necessary for his trip,

informed her he had hurt his back, and requested she contact the fleet manager and dispatcher, Eugene Woods, whom she was unable to contact. He desired to ask for a driver to go in his place or for assistance. In addition, the clerk unsuccessfully tried to reach another driver, Ralph Morgan. Wyatt then asked Tommy Goforth, another driver who had come into the shipping department, to go in his place, but he refused.

5. Wyatt then left for his trip at approximately 5 p.m., conscious that he would have to leave the terminal by 5 p.m. in order to make the 14-hour trip by 7 a.m. the next morning. Time was of the essence for delivering the furniture. The dispatcher had impressed upon him the importance of arriving no later than 7 a.m. on Friday morning. Otherwise, the load would be refused until Monday morning, thus requiring the driver to wait over the weekend. In the past, several drivers had been late in their delivery to this particular retailer, thus causing a great amount of ill will.

6. Companies receiving the merchandise usually allow the truck drivers to hire outsiders to assist them in unloading the truck. However, this particular company had a strict policy forbidding the hiring of outsiders for the reason that the truck was actually backed inside the building. Without assistance of a coemployee Wyatt, with his ailing back, would have had to unload the truck alone, as well as make the 14-hour drive alone. Wyatt felt he could not make the Detroit trip, at least not alone.

7. After having begun the trip, but while still in Marion, Wyatt talked on his citizens band radio with the plaintiff, who was off duty. It was at this time that Wyatt informed the plaintiff of his back incident and requested plaintiff assist him in driving to Detroit and delivering the furniture so that the shipment would be timely delivered. The plaintiff asked Wyatt if he could be dropped off on the return trip from Detroit after making the delivery so that he could go to Wheeling, West Virginia, to pick up a car. Wyatt agreed to this and also offered to split his pay for the single operation with the plaintiff.

8. At the time the plaintiff and Wyatt started on the trip to Detroit, the dispatcher was not aware plaintiff was accom-

panying Wyatt. Both Wyatt and plaintiff had, and knew that other drivers had, doubled up and split the pay on previous occasions when only a single driver was dispatched.

9. In each truck the defendant-employer provides a manual which contains regulations for the drivers. One provision forbids a driver to carry unauthorized passengers. The only authorized passengers are those with a written pass signed by company officials. Drivers found violating this rule are subject to dismissal. Exceptions to this rule are allowed only in cases of emergency, and at the end of the trip the driver is to turn in information regarding the circumstances. Wyatt intended to comply with this rule on returning from Detroit. It can be said that here a situation of emergency existed in that Wyatt had reinjured his back and the need to depart immediately in order to make a timely arrival in Detroit and the unsuccessful efforts to locate the dispatcher or other assistance ruled out the usual procedures for obtaining permission to engage assistance.

10. Wyatt drove from Marion, North Carolina to Knoxville, Tennessee, where the plaintiff began driving. An accident occurred involving this truck while the plaintiff was driving and Wyatt was asleep near Finley, Ohio on Interstate 75 which was the normal route to Detroit.

11. As a result of the truck accident, plaintiff sustained the following injuries: cerebral concussion, lacerations of the forehead and chin, two perforations in the upper jejunum, and lacerations in the mesentery. Drs. R.P. Pai and R.J. Stern treated the plaintiff during the stay in the hospital in Ohio. Dr. Joseph Y. Chung of Marion, who followed the patient after his return to North Carolina, discharged him on December 8, 1977. There is no evidence of plaintiff sustaining a permanent partial disability. The medical report is unclear as to whether plaintiff had reached maximum medical improvement at this time and was able to return to work. His first day at work following the truck collision was January 2, 1978.

12. Wyatt received injuries in the truck collision and was out of work for a period of time. He was allowed to return to his job as truck driver and was not dismissed as a conse-

quence of requesting and taking the plaintiff with him to Detroit for assistance, nor as a consequence of being in the trucking accident.

13. On October 7, 1977, plaintiff sustained an injury by accident which arose out of and in the course of his employment with the defendant-employer when the truck in which he was driving as an assistant to the regular dispatched driver was involved in a collision. Though the plaintiff stood to personally benefit from going with Wyatt since he was to be dropped off on the return trip in order to go on a personal errand in West Virginia, the act of plaintiff's assisting Wyatt would have made possible a timely delivery, had it not been interrupted, when it otherwise would have been an impossibility. It was clearly to the defendant-employer's advantage for the shipment to arrive promptly and to avoid further hostility with the retailer. Plaintiff's acts benefitted the defendant-employer to such an appreciable extent as to bring his activity regarding the trip to Detroit within the scope and course of his employment. Plaintiff's aid furthered the defendant employer's business.

Upon the facts found, the deputy commissioner concluded that plaintiff

" . . . sustained an injury by accident which arose out of and which was within the scope and course of his employment when he acted to benefit the defendant-employer to such an appreciable extent as to outweight any personal benefit which he might have received. GS Sections 97-2; *Guest v. Brenner Iron & Metal Co.*, 241 NC 448, 85 SE 2d 596 (1955)."

On appeal to the full Commission, the award was affirmed (with insignificant modifications in the facts found), the Commission stating that it was "of the opinion that the correct result was reached in regard to compensability."

Defendant appealed the decision of the full Commission to this Court.

*Richard G. Miller for plaintiff appellee.*

*Hedrick, Feerick, Eatman, Gardner and Kincheloe, by J.A. Gardner, III, for defendant appellant.*

MORRIS, Chief Judge.

Defendant brings forth thirteen assignments of error on appeal. Assignments of error Nos. 4 and 9 are not argued by defendant in his brief. Therefore, these are deemed abandoned pursuant to Rule 28(b)(3); Rules of Appellate Procedure.

[1] Defendant charges in its first assignment of error that the deputy commissioner erred in overruling its objection to a question posed by plaintiff at the original hearing to witness Wyatt. The question and testimony to which defendant objected were in reference to defendant's regulation which forbade drivers from carrying unauthorized passengers in their trucks without company approval. The question and contextual testimony read as follows:

> Mr. Wyatt was then handed papers and recognized them as the regulations for drivers. On page 17 at the bottom of the page is a paragraph entitled "In the Truck, paragraph 2" which states as follows: "Any truck carrying unauthorized passengers is illegal and contrary to the insurance company rules and is prohibited in this company. Drivers found violating this rule are subject to dismissal. The only authorized passengers are those with written passes signed by company officials. Exceptions to this rule will be allowed only in cases of emergency. The name of the person, where and why they were picked up, and where they were taken should be turned in with your bills at the end of the trip." I knew that rule before this trip. The only way I could get the stuff up there was to take Mr. McNinch with me.
>
> Q. Was it your intention to comply with this rule?
>
> MR. GARDNER: Objection.
>
> A. Yeah.
>
> THE COURT: Overruled.
>
> EXCEPTION NO. 1.
>
> When I got back, I was going to inform Mr. Wood as to what I had done and I also tried to get hold of him before.

Defendant contends that the question was incompetent, irrelevant, leading and called for a conclusion by the witness. Defendant takes the position that Wyatt's state of mind was irrelevant to the issues of this case, that only plaintiff's state of mind was relevant as to whether he was acting within the

course of his employment and in compliance with defendant's regulations.

We do not agree. Evidence is relevant if it has any logical tendency, however slight, to prove a fact in issue. 1 Stansbury, N.C. Evidence 2d, § 77 (Brandis rev. 1973). There should be a reasonable connection between the evidence and the fact to be proved by it. However, the evidence need not bear directly on the issue.

> It is not required that evidence bear directly on the question in issue, and evidence is competent and relevant if it is one of the circumstances surrounding the parties, and necessary to be known, to properly understand their conduct or motives, or if it reasonably allows the jury to draw an inference as to a disputed fact. (Citation omitted.)

*State v. Arnold*, 284 N.C. 41, 47-48, 199 S.E. 2d 423, 427 (1973).

In determining whether plaintiff was acting within the course of his employment at the time this accident occurred, the issues narrow to the question of whether the truck drivers were acting in compliance with defendant's regulations. Wyatt's testimony with regard to whether he was acting, or intended to act, in compliance with the regulations was relevant to this issue.

Wyatt was basically responsible for carrying out this haul. It was Wyatt who would suffer the consequences if this load was late arriving in Detroit. Plaintiff was a passive participant who agreed to help his co-employee get the job done properly. The major decisions in this instance had to be made by Wyatt. It was up to Wyatt whether to attempt to make the Detroit deadline. It was his decision that circumstances warranted his carrying plaintiff along on the trip without first notifying the dispatcher. It was his decision that the situation merited being treated as an emergency so that defendant's ordinary rules could be suspended. The question was posed to Wyatt for the purpose of showing that this was an emergency situation within the rules of the drivers policy manual, which justified Wyatt in allowing plaintiff to aid him with this haul. Therefore, we think the question addressed to Wyatt as to whether he intended to comply with these rules was relevant. There was a reasonable relationship between the question asked and the issue of whether plaintiff was acting within the course of his

employment.

Although the question was leading, we discern no abuse of discretion requiring reversal. *State v. White*, 298 N.C. 430, 259 S.E. 2d 281 (1979); *State v. Greene*, 285 N.C. 482, 206 S.E. 2d 229 (1974). We are of the opinion that the deputy commissioner did not abuse her discretion by allowing plaintiff's question. The question functioned to clarify for the tribunal the point which the witness was trying to convey.

Nor do we think plaintiff's question usurped the decision making province of the fact finder. Plaintiff asked Wyatt what his intentions were in carrying out his actions. Plaintiff was not asking the witness for an opinion. The jury was left free to determine for itself what Wyatt's true intentions were from the evidence of the events surrounding the incident and the actions Wyatt took as from his testimony.

Defendant assigns error to six portions of the findings of fact as adopted by the Commission. In each of these assignments of error defendant claims that the specified findings of fact are not supported by competent evidence in the record, and that each is against the greater weight of the evidence.

The standard by which the Industrial Commission is required to examine the evidence before it in order to draw its conclusions therefrom was well summarized by Judge Brock, later Chief Judge, in *West v. Stevens*, 6 N.C. App. 152, 169 S.E. 2d 517 (1969).

> It is well established that the findings of fact by the Industrial Commission are conclusive and binding upon the courts when supported by competent evidence. *Taylor v. Jackson Training School*, 5 N.C. App. 188, 167 S.E. 2d 787. Also, the Commission is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Taylor v. Jackson Training School, supra.*

> In its consideration of claims the Industrial Commission is not compelled to find in accordance with testimony of any particular witness; its function is to weigh and evaluate the entire evidence and determine as best it can where the truth lies.

6 N.C. App. at 155-156, 169 S.E. 2d at 519.

Defendant first assigns error to the use of the word "severely" in finding of fact No. 3. Defendant seems to contend that the commissioner found that Wyatt injured his back "severely" when he hooked up the trailer. The finding was, however, that his slipping while hooking the trailer "caused his back to hurt severely." There is considerable difference in meaning, and the evidence does support a finding that Wyatt's back hurt "severely." In any event, the full Commission deleted the word "severely" from finding of fact No. 3, so defendant's position is not well taken.

Defendant complains that several of the Commission's findings of fact which were based upon the premise that it would be possible for Wyatt and plaintiff to reach the customer in Detroit by the seven a.m. deadline on the seventh were in error. Defendant's position is that in consideration of the time at which Wyatt and plaintiff departed from Marion it was impossible for them to reach their destination on time. If, as defendant argues, the evidence showed it was impossible for the drivers to meet their deadline, this would contradict several of the findings of fact upon which the Commission's ultimate conclusion that an emergency situation did exist was based.

[2] In summary, defendant complains that the following findings of fact were not supported by the evidence: In a portion of its fifth finding of fact the Commission found that, "[t]ime was of the essence for delivering the furniture;" as part of its seventh finding of fact the Commission found that Wyatt requested assistance from plaintiff, "so that the shipment would be timely delivered;" the Commission found in its thirteenth finding that plaintiff's rendering of assistance to Wyatt would have made possible the timely delivery of the furniture to defendant's benefit. Defendant contends that because the evidence shows that it was impossible for the drivers to reach their destination on time, these findings of fact are necessarily erroneous.

Defendant argues that the only competent evidence of record reflects that Wyatt and plaintiff, working together, could not have possibly reached Detroit by the seven a.m. appointment. It contends that the evidence shows that the trip to Detroit normally took approximately fourteen hours, and the pair of drivers did not leave Marion together until some uncertain time after five p.m. on 6 October 1977. Therefore, it was

impossible for them to have reached Detroit by seven a.m. the next morning.

We disagree. There was evidence in the record to support a finding that it was possible for Wyatt and plaintiff to reach their destination on time. The record indicates, at least, by inference, that plaintiff and Wyatt both thought that they could reach their destination on time if they departed from Marion when they did. Had Wyatt left the Marion terminal at five p.m., this would have given him precisely fourteen hours from the time of departure until the appointed time of arrival. We note that the fourteen hours was an approximation of the necessary time. Intervening extraneous factors in the individual trip could create variations in the time either way.

The evidence shows that after leaving the terminal at five p.m. Wyatt talked with plaintiff on his citizens band radio, and asked for his assistance. Wyatt then met plaintiff at the Sugar Hill Truck Stop to discuss the trip, and later picked up plaintiff at his home after he had showered and packed fresh clothes. There is no direct evidence of how long this course of events took, or at what time the drivers actually departed for Detroit.

Wyatt had made deliveries to the same customer in Detroit in the past "over 25 times". Plaintiff had also made deliveries to this destination on two or three previous occasions. Obviously, both should have been familiar with the route and the amount of time needed to complete the trip. It is a fair assumption that both drivers thought they could leave Marion at the time they eventually did, and still reach Detroit on time.

With these factors in mind, we think there were sufficient facts from which the Commission could conclude that it was possible, albeit difficult, for Wyatt and plaintiff to reach their destination on time. This being so, this determination supports the premise upon which the Commission based these three disputed findings of fact. Therefore, we hold that these three findings of fact were supported by evidence in the record.

Furthermore, with regard to the Commission's finding that, "[t]ime was of the essence for delivering the furniture" the record contains more substantiation. The evidence shows that the dispatcher had impressed upon Wyatt the importance of arriving at the retailer's in Detroit no later than the appointed

time the following morning. Otherwise, the load of furniture would be refused until the following Monday morning. Plaintiff and Wyatt were aware that in the past defendant's drivers had been delinquent in the deliveries to this particular customer, causing ill feelings between defendant and this customer.

Wyatt testified with regard to whether it was his impression that time was of the essence in making this delivery as follows:

> I knew that if I waited long enough I could get up with Mr. Wood and he would take care of things, but I didn't have time. It was 5:00. I had a 7:00 appointment. I had to go. I knew Mr. Woods could take care of that if I called him but Mr. Woods told me to be there and I had no choice except to go.

This evidence adequately supports the contested finding of fact.

Defendant submits that the Commission erred in adopting the portion of finding of fact No. 8 in which the deputy commissioner found that, "[b]oth Wyatt and Plaintiff had, and knew that other drivers had, doubled up and split the pay on previous occasions when only a single driver was dispatched."

On redirect examination, plaintiff testified: "I do know first-hand that drivers double up with the company." Similarly, Wyatt testified that: "To my knowledge they have had some double operations. In fact, I run double myself." This testimony does not indicate that plaintiff, himself, had actually ever run double, but it does show that he was aware of the practice. Any error resulting from the Commission's finding that both plaintiff and Wyatt had run double was not prejudicial. It is obvious from this testimony that running double was not an uncommon practice among defendant's drivers. This assignment of error is overruled.

Defendant maintains that there was insufficient evidence to support the portion of finding of fact No. 9 in which the Commission found that Wyatt acted with the intention to comply with defendant's regulations. Previously, we have discussed the circumstances under which Wyatt was acting. It is unnecessary to recite that evidence here. Those circumstances support the conclusion that Wyatt was faced with an emergency situation that justified his disregard of defendant's normal rules of

operation. Futhermore, Wyatt testified that he acted with the intention of complying with defendant's rules. We have already held that this testimony was relevant and admissible. We think this evidence adequately supports the contested finding of fact.

[3] The major issue presented by this appeal is whether plaintiff was acting within the course and scope of his employment at the time the accident occurred. Defendant contends that the Commission was in error when it concluded as a matter of law that the injuries plaintiff sustained arose out of and in the course of plaintiff's employment. Defendant argues that there was no competent evidence to support such a conclusion, and that such a conclusion under the facts of this case was contrary to the laws of this State.

It is defendant's position that at no time during the course of events leading up to and including the accident was plaintiff acting within the course of his employment. He contends that this is so because plaintiff ignored the prohibitions of his employer, failed to attempt to obtain authorization from defendant to accompany Wyatt on the trip, undertook the trip on condition that he obtain personal benefits from it, had no expectation of receiving pay for his assistance, and had no authorization although he knew that it was required and knew that he was off duty at all times during that weekend.

In conjunction with its argument that the Commission's conclusions of law were contrary to the law, defendant asserts that conclusions of law Nos. 1, 2 and 4 were not properly supported by findings of fact. However, in his brief defendant does not specifically address the position he takes in his assignments of error with regard to whether these conclusions of law were supported by the findings of fact. Therefore, we deem those contentions to be abandoned.

In *Guest v. Iron & Metal Co.*, 241 N.C. 448, 85 S.E. 2d 596 (1955), Justice Bobbitt, later Chief Justice, summarized the law of torts with respect to what constitutes acting within the scope of one's employment as follows:

The Act [Workman's Compensation Act] "should be liberally construed to the end that the benefits thereof should not be denied upon technical, narrow and strict interpretation," *Johnson v. Hosiery Co.*, 199 N.C. 38, 153 S.E. 591; but "the rule of liberal construction cannot be employed to

attribute to a provision of the act a meaning foreign to the plain and unmistakable words in which it is couched," *Henry v. Leather Co.*, 231 N.C. 477, 57 S.E. 2d 760.

"Acts of an employee for the benefit of third persons generally preclude the recovery of compensation for accidental injuries sustained during the performance of such acts, usually on the ground they are not incidental to any service which the employee is obligated to render under his contract of employment, and the injuries therefore cannot be said to arise out of and in the course of the employment. . . . However, where competent proof exists that the employee understood, or had reasonable grounds to believe that the act resulting in injury was incidental to his employment, or such as would prove beneficial to his employer's interests or was encouraged by the employer in the performance of the act or similar acts for the purpose of creating a feeling of good will, or authorized so to do by common practice or custom, compensation may be recovered, since then a casual connection between the employment and the accident may be established." Schneider, 7 Workmen's Compensation Text, sec. 1675.

As stated by Larson: "If the ultimate effect of claimant's helping others is to advance his own employer's work, by removing obstacles to the work or otherwise, it should not matter whether the immediate beneficiary of the helpful activity is a co-employee, an independent contractor, an employee of another employer, or a complete stranger." 1 Larson's Workmen's Compensation Law, sec. 27.21.

Decisions in other jurisdictions cited by these text writers, some tending to support plaintiff's position and others tending to support defendant's position, disclose factual situations somewhat similar yet different in some material feature from the case now before us. Basically, whether plaintiff's claim is compensable turns upon whether the employee acts for the benefit of his employer to any appreciable extent or whether the employee acts solely for his own benefit or purpose or that of a third person.

241 N.C. at 452, 85 S.E. 2d at 599-600.

Upon examination of the facts of the case we think that plaintiff was acting within the scope of defendant's regulations,

when under these circumstances he departed on this trip. Through its regulations defendant can be said to have implicity authorized the haul in the manner in which it was carried out. Defendant's regulations forbade its drivers from carrying unauthorized passengers on hauls. However, exceptions were made to this rule in case of emergencies. What constituted an emergency is not made clear or specified in the regulations contained in the record. Under the regulations, when a driver makes such an exception he is required to turn in information regarding the surrounding circumstances to defendant at the conclusion of the trip. Wyatt testified that it was his intention to comply with defendant's regulations, and that he intended to notify defendant that plaintiff had accompanied him on the trip upon returning. It can reasonably be said that in these circumstances an emergency situation like that referred to in defendant's regulations existed. Wyatt had reinjured his back, and the need to depart immediately in order to make a timely arrival in Detroit, along with the unsuccessful efforts to locate the dispatcher or other assistance, ruled out the usual procedures for obtaining permission to engage assistance. This customer required special promptness from defendant's drivers.

Plaintiff stood to benefit personally by accompanying Wyatt, because he was to be dropped off on the return trip to do a personal errand in West Virginia. The record does not show that in an emergency such as this, allowing an unauthorized passenger to perform a personal errand on the return trip would violate defendant's regulations. In view of the fact that plaintiff was the only driver whom Wyatt could locate who would agree to accompany him, the agreement to deviate from the normal procedure on the return trip certainly appears to have been reasonable. We note that prior to the occurrence of the accident no deviation had been made in the usual route.

Based on these facts, we think there was sufficient evidence upon which the Commission could conclude as a matter of law that in accompanying Wyatt on this trip plaintiff was acting within the course of his employment. His actions were in accord with the emergency exception to defendant's regulations. Therefore, plaintiff's actions were authorized by defendant.

We have found that the Commission's findings of fact were adequately supported by evidence in the record. The facts as found by the Commission, when considered in the light most

favorable to plaintiff, support the Commission's ultimate con-
clusion of law that plaintiff was injured by accident arising out
of and in the course of his employment.

Affirmed.

Judges VAUGHN and BECTON concur.