922 F.2d 836
Unpublished Disposition
 NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
Charles Gene ROGERS, Petitioner-Appellant,
v.
Randy LEE, Attorney General of North Carolina, Respondents-Appellees.
 No. 90-6870.
 United States Court of Appeals, Fourth Circuit.
 Submitted Dec. 21, 1990.
Decided Jan. 14, 1991.
 
 Appeal from the United States District Court for the Eastern District of North Carolina, at Raleigh. Terrence W. Boyle, District Judge. (CA-89-22-HC-BO)
 Charles Gene Rogers, appellant pro se.
 Clarence Joe DelForge, III, Office of the Attorney General of North Carolina, Raleigh, N.C., for appellees.
 E.D.N.C.
 AFFIRMED IN PART, VACATED IN PART AND REMANDED.
 Before PHILLIPS and CHAPMAN, Circuit Judges, and BUTZNER, Senior Circuit Judge.
 PER CURIAM:
 
 
 1
 Charles Gene Rogers, a North Carolina prisoner proceeding pro se, was convicted of first degree murder and felonious assault for which he received a life sentence and ten years imprisonment. He filed a petition for habeas corpus pursuant to 28 U.S.C. Sec. 2254 in which he asserted several claims for relief. The district court adopted the magistrate's report and recommendation and dismissed the petition. Rogers noted a timely appeal. The district court granted a certificate of probable cause. We affirm in part, vacate in part and remand.
 
 
 2
 Rogers asserts that the evidence presented at trial is insufficient to support his convictions. The standard of review of a sufficiency claim in a habeas corpus action is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could find essential elements of the crime beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307 (1979). The reviewing court must consider circumstantial as well as direct evidence and allow the government the benefit of all reasonable inferences from facts proven to facts sought to be established. United States v. Tresvant, 677 F.2d 1018 (4th Cir.1982).
 
 
 3
 Murder in the first degree in North Carolina is the unlawful killing of a human being with malice and premeditation and deliberation. State v. Rogers, 316 N.C. 203, 341 S.E.2d 713 (1986); N.C.Gen.Stat. Sec. 14-17 (1981). An eyewitness testified at trial that he observed Rogers speaking with the victim (Hall) and another man (Edwards). He testified that Rogers's hand movements seemed to indicate that he was trying to explain something to them. He continued that Rogers pulled out a large caliber pistol and began shooting. The witness stated that Hall fell to the ground and Edwards ran as Rogers fired a second shot.
 
 
 4
 The prosecutor argued to the jury that Rogers mistakenly shot Hall in his attempt to shoot Edwards. A firearms expert testified that bullets recovered from the scene were .44 caliber and were fired from the same firearm. Rogers's co-defendant/companion reported a .44 caliber magnum pistol missing from her house. The state also produced evidence which indicated that Rogers and Edwards had argued on previous occasions and that Rogers had physically threatened Edwards. The evidence also established that Rogers was looking for Edwards on the night of the shooting and that he continued to look for him after Hall's murder. Thus, since there was sufficient evidence produced at trial to sustain Rogers's first degree murder conviction, the district court properly dismissed Rogers's sufficiency claim.
 
 
 5
 Rogers alleges that he was denied his constitutional right of confrontation and cross-examination of Edwards, who did not testify at trial. A police officer testified at trial that he had searched for Edwards in order to serve him with a witness subpoena, but could not locate him. Another witness testified that Edwards did not report to work after the shooting and that he had been seen only once since the shooting. Rogers asserts that Edwards's absence from his trial was a violation of his rights to confrontation and cross-examination. There is no evidence, however, that Rogers himself attempted to locate Edwards or to subpoena him as a witness in his own defense. The prosecution chose to try the case without Edwards.
 
 
 6
 The Supreme Court has held that a trial court's denial of a defendant's opportunity to impeach a prosecution witness for bias is a violation of the defendant's rights under the Confrontation Clause, but such a ruling is subject to harmless error analysis under Chapman v. California, 386 U.S. 18 (1967). See Delaware v. Van Arsdall, 475 U.S. 673 (1986). Under Chapman, an error is harmless if it is established beyond a reasonable doubt that the error "did not contribute to the verdict obtained." 386 U.S. at 24. Here, Edwards was not even called as a witness, so no right to confrontation existed. In light of the substantial evidence presented against Rogers, the failure to produce Edwards as a witness was not error at all. Therefore, the district court properly dismissed this claim.
 
 
 7
 Rogers asserts that Edwards's testimony is newly discovered evidence which raises reasonable doubt as to his guilt and would bring about a different outcome at trial. In order to reopen a final judgment on grounds of newly discovered evidence, the evidence must be evidence which could not reasonably have been presented to the state trier of facts and it must bear on the constitutionality of petitioner's detention. Townsend v. Sain, 372 U.S. 293, 317 (1963). The existence merely of newly discovered evidence relevant to the guilt of a state prisoner is not a ground for relief on federal habeas corpus. Id.
 
 
 8
 Edwards materialized after the trial took place. In a hearing on Rogers's motion for appropriate relief, the state court judge found that "the State had had said witness [Edwards] subpoenaed but he could not be served or located, although a diligent and almost continuous effort was made to do so." The state court further found that Edwards's testimony "tend[ed] to support the State's version of this incident as to who shot the deceased, Charles Hall, and it further would have conflicted with the testimony of ... Defendant Rogers at trial as to who shot the victim, Charles Hall, and as to how the shooting occurred." The court also found that "Edwards did not appear as a witness because of his fear of Defendant Rogers and pursuant to implied threats that were relayed to him from Defendant Rogers." These factual findings are presumed correct under 28 U.S.C. Sec. 2254(d). Therefore, though Edwards's testimony was material to the issues involved, it was cumulative of the state's evidence and would not produce an acquittal on retrial. For these reasons, the district court was correct in dismissing this claim.
 
 
 9
 Rogers asserts that the prosecution suppressed two photographs of the murder scene in violation of Brady v. Maryland, 373 U.S. 83 (1963), which held that "suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." 373 U.S. at 87. If the defense requested but was denied production of specific evidence material to the issue of guilt, and the undisclosed evidence might have affected the outcome of the defendant's trial, a new trial is required if there was a "reasonable probability" that the undisclosed evidence would have materially affected the verdict. Chavis v. North Carolina, 637 F.2d 213, 223 (4th Cir.1980). A "reasonable probability" is a probability sufficient to undermine confidence in the outcome. United States v. Bagley, 473 U.S. 667, 682 (1985).
 
 
 10
 The photographs are not in the record. The magistrate describes one photograph as one of the crime scene on the night of the murder which was taken by an investigating police officer. It portrays an area between a truck and a fence. The magistrate describes the other photograph as "another photograph of the crime scene." An attorney who defended Rogers's co-defendant testified in a state court hearing on Rogers's motion for appropriate relief that the second photograph was an enlargement of the first. The attorney testified in the state court hearing that the photographs were significant in countering the testimony of the state's eyewitness, who testified at trial that he had driven to the apartment complex where the shooting occurred and parked his vehicle adjacent to the complex between another vehicle and a fence. In the photograph, there is no vehicle between the truck and the fence.
 
 
 11
 Rogers argues that the photographs damage the credibility of the state's eyewitness; the attorney who testified at the motion hearing stated that it "would have been a key picture based on [the witness's] testimony if he in fact parked his vehicle between the truck and the fence as he said he did." The co-defendant's attorney stated that he was "90 percent sure" that the prosecutor did not show him the two photographs before trial.
 
 
 12
 The prosecution entered another photograph of the crime scene into evidence at trial. Rogers's own trial attorney testified in the state court motion hearing that "[t]here were a number of photographs taken from this general area showing the front of the apartment and there were some showing this vacant space, and I believe this one was used at trial." The attorney continued, "I think I used this to argue about to show that [the eyewitness] claims his car was parked there and to show that it was not there." He continued that the photograph used as evidence "backed up our position that it [the eyewitness's car] wasn't there." The attorney commented that "although it [the photograph used] doesn't go all the way to the fence, it shows a good deal of the portion." The attorney stated that the photograph used "didn't go all the way to the fence and there was--I know there is eight or ten feet beyond the end of this house or maybe even more over to the chain link fence." He continued that he was not shown a picture which depicted this area "until sometime after the case was on appeal."
 
 
 13
 The trial transcript reveals that Rogers's attorney argued at trial that the photograph entered as evidence indicated that "[t]here is no vehicle parked to the left of the pickup truck." The prosecutor countered that though testimony about the presence of a car was conflicting, there was testimony that the car was moved.
 
 
 14
 The state court judge at the motion hearing found that the photograph was not intentionally withheld from Rogers's attorney and was not introduced into evidence at trial. The court noted that there was conflicting testimony at trial concerning the presence of a car between the truck and the fence and that the matter was a factual issue properly left to the jury. The court continued that the photographs were cumulative and were not of such a nature that another trial would yield a different result. Since the record supports that conclusion, the district court properly dismissed this claim.
 
 
 15
 Rogers contends that the trial court violated his constitutional right to equal protection when it denied his motion to prohibit the prosecutor from peremptorily challenging black jurors. Defense counsel made a motion prior to voir dire to prohibit the prosecutor from peremptorily challenging black jurors. The trial court denied the motion on the grounds that the defendant did not submit any proof in support of his allegation that the prosecutor systematically excluded blacks from juries. As the defense counsel noted in Rogers's state appeal, the prosecution peremptorily challenged every black juror who was not removed for cause. Therefore, Rogers, who is black, was tried by an all white jury.
 
 
 16
 Under Batson v. Kentucky, 476 U.S. 79 (1986), in order for a defendant to make out a prima facie case of discrimination in the prosecutor's exercise of peremptory challenges, he must establish that he is a member of a cognizable racial group, that the group's members have been excluded from his jury, and that the facts and circumstances raise the inference that the exclusion was based on race. The burden then shifts to the prosecution to give a neutral reason for the exclusion which must be more than the assumption that the jurors would be partial to the defense because of their shared race. Id. The Supreme Court has held that the Batson rule should not be applied retroactively in federal habeas corpus review of a petitioner's conviction that became final before Batson was announced. Allen v. Hardy, 478 U.S. 255, 260-61 (1986). The Court stated that a case is final "where the judgment of conviction was rendered, the availability of appeal exhausted, and the time for petition for certiorari had elapsed before our decision in" Batson. Id. at 258 n. 1.
 
 
 17
 The North Carolina Supreme Court issued its opinion affirming Rogers's conviction on April 2, 1986. Batson was announced on April 30, 1986. A petition for a writ of certiorari from the Supreme Court is timely if it is filed within ninety days after entry of the judgment. Sup.Ct.R. 13. Since Rogers's time for petitioning for certiorari had not elapsed before Batson was announced, his conviction was not final under Allen. The district court thus erred in evaluating this claim under the pre-Batson test of Swain v. Alabama, 380 U.S. 202 (1965). See also Griffith v. Kentucky, 479 U.S. 314 (1987). This Court has previously remanded cases which were pending when Batson was announced for the district court to determine if the prosecutor used his peremptory challenges to discriminate against black jurors. See United States v. Allen, 814 F.2d 977 (4th Cir.1987). We therefore vacate the district court's order as to Rogers's Batson claim and remand for further proceedings consistent with this opinion.
 
 
 18
 Rogers next alleges racial discrimination in the selection of his grand jury foreman. He first raised this issue in his state motion for appropriate relief. He did not raise the issue in his criminal appeal. Under N.C.Gen.Stat. Sec. 15A-1419(a)(3), a motion for appropriate relief may be denied when the defendant was in a position to adequately raise the same issue in a previous appeal but did not do so. The statute also states that the court may nonetheless grant the motion "in the interest of justice and for good cause shown ... if it is otherwise meritorious."
 
 
 19
 The judge who heard Rogers's motion for appropriate relief specifically found that Rogers "waived any right that he may have had to object to the appointment of said Foreman, and that furthermore, under the provisions of G.S. 15A-1419(a), defendant Rogers also has waived any such right in that he has been in a position to adequately raise this ground but has failed to do so up until the date of this hearing."
 
 
 20
 Where the petitioner forfeited state review of his claims by failing to comply with state procedural requirements, federal habeas review is barred by procedural default absent a showing of both cause and prejudice, unless a constitutional violation has probably resulted in conviction of one who is actually innocent. Murray v. Carrier, 477 U.S. 478 (1986). But unless the last state court rendering judgment expressly relies on procedural bar, federal courts should not treat the claim as procedurally barred. Harris v. Reed, 489 U.S. 255 (1989). Since the last state court rendering a judgment explicitly relied on procedural bar in dismissing Rogers's claim of racial discrimination in the selection of his grand jury foreman, and since Rogers has not demonstrated cause or prejudice or that he is actually innocent, the district court was correct in concluding that the claim was procedurally barred. We therefore affirm the district court's dismissal of this claim.
 
 
 21
 Rogers asserts that the North Carolina Supreme Court improperly held that the admission of certain hearsay testimony was harmless error. The trial court permitted an investigating police officer to relate a statement an eyewitness made to him that Rogers shot the victim. The statement was admitted to corroborate the eyewitness's earlier voir dire testimony as to what he had told the police officer.
 
 
 22
 The North Carolina Supreme Court agreed "that the testimony was improperly admitted for this purpose," and noted that the eyewitness did not repeat the statement while testifying before the jury. Rogers, 341 S.E.2d at 724. The court continued that admission of the hearsay statement was harmless because it was admitted for another purpose. The police officer testified that the eyewitness's statement prompted him to cross the street to talk with Rogers. The court then concluded that the statement was not admitted to prove the truth of the matter asserted (that Rogers killed Hall), but to explain why the police officer went across the street to talk with Rogers after the shooting. The court noted that statements which are offered for any purpose other than for proving the truth of the matter stated are not objectionable as hearsay, State v. Irick, 291 N.C. 480, 231 S.E.2d 833 (1977), and that statements of one person to another are admissible to explain the subsequent conduct of the person to whom the statement was made. State v. White, 298 N.C. 430, 437, 259 S.E.2d 281, 286 (1979).
 
 
 23
 Absent "circumstances impugning fundamental fairness or infringing specific constitutional protections," admissibility of evidence does not present a federal question. Grundler v. North Carolina, 283 F.2d 798, 802 (4th Cir.1960); see also Chance v. Garrison, 537 F.2d 1212 (4th Cir.1976). Since the record does not reveal any violations of fundamental fairness or any specific constitutional protections, Rogers's allegations concerning the police officer's testimony do not state a federal claim. The district court therefore properly dismissed this claim.
 
 
 24
 For the above reasons we affirm the district court's dismissal of all of Rogers's claims except for his claim under Batson that black jurors were struck from his jury in a racially discriminatory manner. As to that claim, we vacate the district court's order and remand for further proceedings.
 
 
 25
 AFFIRMED IN PART, VACATED IN PART, AND REMANDED.