STATE OF NORTH CAROLINA v. CHARLES GENE ROGERS, aka "Daddy Rich" aka Charles Gene Paige and BELINDA JOYCE CARRAWAY

No. 165A84

(Filed 2 April 1986)

1. **Criminal Law § 89.4— witness allegedly improperly influenced by officer — motion for pretrial investigation denied — no error**

   The trial court did not err in a prosecution for murder and assault by refusing defendant Carraway's pretrial motion requesting an internal investigation of whether a detective had caused the only eyewitness to the shooting to fabricate his account of the murder. Although the witness admitted telling defendant Carraway and her attorney that he had not seen the killing, defendant Carraway did not bring forth any evidence that tended to show that the detective had improperly influenced the witness and the detective was subjected to cross-examination concerning his alleged inappropriate behavior.

2. **Criminal Law § 75.4— waiver of rights — defendant sleepy and tired — statement admissible**

   The trial court did not err by denying defendant Carraway's motion to suppress statements made to FBI agents after her arrest in Maryland where the trial court found that defendant was advised of her rights when taken into custody; she did not request an attorney and voluntarily answered the agent's biographical questions; defendant closed her eyes during the ten-minute ride to the FBI office but appeared to be at all times in full command of her physical and mental faculties; defendant told agents upon her arrival at their office that she had been traveling with defendant Rogers for the past few months, that she owned a .44 caliber weapon, and that she did not know the victim; and defendant then exercised her right to an attorney and the interview stopped.

3. **Constitutional Law § 63; Jury § 7.11— death qualified jury — no error**

   The trial court did not err in a first degree murder prosecution by denying defendants' motions to prohibit the prosecution from death qualifying the jury.

4. **Jury § 7.14— peremptory challenge of black jurors allowed — no error**

   The trial court did not err in a first degree murder prosecution by denying defendants' motions to prohibit the State from peremptorily challenging black jurors. N.C.G.S. § 15A-1217.

5. **Criminal Law § 101.1; Jury § 7.14— exercise of peremptory challenge — no error**

   The trial court did not err in permitting the State to peremptorily challenge a black juror who had already been passed by the State and defendant where the State asked a black potential juror whether he or any member of his family had ever been charged with a serious offense; none of the jurors being questioned responded; the State tendered the juror to the defendants;

defendants' motions to excuse the juror for cause were denied; defendants' peremptory challenges were unsuccessful because both defendants had exhausted all their peremptory challenges; the State obtained information before the jury was empaneled that the juror's two sons had been convicted of shoplifting and felonious breaking and entering; the information was verified at a hearing; and the State exercised one of its peremptory challenges to remove the juror. The trial court did not abuse its discretion in reopening the voir dire examination of the juror and the State was entitled to exercise one of its remaining peremptory challenges. N.C.G.S. 15A-1214(g).

**6. Jury § 7.14— motion for additional peremptory challenges denied—no error**

There was no error in a murder and assault prosecution where the court denied defendant Carraway's motion for an additional peremptory challenge after the State exercised a peremptory challenge to remove a juror and defendant argued that she was therefore prevented from having the removal reviewed on appeal. The use of a peremptory challenge by one party does not unfairly prejudice the opposing party's position in the jury selection process. N.C.G.S. 15A-1217(a).

**7. Jury § 6— individual voir dire denied—no error**

The trial court did not abuse its discretion in a murder and assault prosecution by denying defendants' motion for an individual *voir dire* and separation of potential jurors. The argument that prospective jurors in a capital case are improperly influenced by repetitious questions concerning capital punishment is speculative.

**8. Jury § 6.4— capital punishment—court's questions to potential juror—no error**

The trial court did not improperly question a potential juror during *voir dire* for a first degree murder prosecution where the court's questions were an attempt to clarify the juror's position on the issue of capital punishment.

**9. Jury § 6— voir dire—order of examination—no error**

Defendant Carraway was not denied her right to examine a full panel of prospective jurors where her *voir dire* examination followed the State's and the codefendant's examinations. Defendant still had the right to exercise her fourteen peremptory challenges and to exercise her right to challenge for cause. N.C.G.S. 15A-1214.

**10. Jury § 7.11— nondeath qualifying questions—not allowed—no error**

The trial court did not abuse its discretion in a first degree murder prosecution by refusing to ask prospective jurors during *voir dire* nondeath qualifying questions to counter the State's death qualifying questions.

**11. Jury § 6.2— voir dire examination—use of fully satisfied and entirely convinced—no error**

The trial court in a murder and assault prosecution properly overruled defendant's objection to the State using "fully satisfied and entirely convinced" instead of "reasonable doubt" in its questions to prospective jurors because the N. C. Pattern Jury Instructions for criminal cases define reasonable doubt in those terms. N.C.P.I.-Crim. 101.10.

State v. Rogers

**12. Jury § 6.3— voir dire examination—question as to effect of number of witnesses—not allowed—no error**

The trial court did not err by sustaining objections to defendant's questions asking prospective jurors whether the fact that she called fewer witnesses than the State would make a difference in their decision. Hypothetical questions which attempt to stake out a juror's future course of action are improper.

**13. Criminal Law § 103— murder and assault—conflicts in evidence—jury question**

The trial court did not err in a murder and assault prosecution by allowing a police captain to testify that the eyewitness's car was parked at the murder scene between 11:15 p.m. and 3:30 a.m. on the night of the shooting even though the State's other witnesses did not remember seeing the car. Contradictions in the evidence are matters for the jury to resolve.

**14. Criminal Law § 99.2— voir dire on admissibility of identification—questions by court—no error**

The trial court did not err during a voir dire to determine the admissibility of identification by directing a series of questions to the witness. N.C.G.S. 15A-1222 does not apply when the jury is not present during questioning and it is evident from the record that the witness had difficulty understanding some of the prosecution's questions and answering clearly.

**15. Criminal Law § 66— in-court identification—contrary statement prior to trial—identification admissible**

The trial court did not err in a murder and assault prosecution by allowing an in-court identification even though the witness had made a contrary statement prior to trial because the in-court testimony was consistent and in accordance with the first statement to police.

**16. Criminal Law § 89— eyewitness testimony—admissible**

The trial court did not err in a murder and assault prosecution by not striking *ex mero motu* the entire testimony of the only eyewitness on the grounds that it lacked credibility where the witness related the murder as he saw it and his testimony was corroborated in several respects. Moreover, a prior inconsistent statement and seemingly questionable portions of his testimony were matters bearing on the weight of the testimony, not its admissibility.

**17. Criminal Law §§ 66.20, 73.2— identification of defendant as man pointed out as murderer—admissible**

The trial court did not err in a prosecution for murder and assault by admitting the identification testimony of a witness who saw one defendant several times the night of the murder and who was told that defendant was the man who was supposed to have shot the victim. The court's findings were supported by competent evidence and are thus binding on appeal, and the statement that defendant was supposed to have shot the victim, though improperly admitted to corroborate the testimony of the person making the statement, was admissible to explain the witness's subsequent conduct.

**18. Criminal Law § 43.2— photographs of scene—properly admitted**

The trial court did not err in an assault and murder prosecution by admitting photographs offered by the State where a witness testified that the photographs fairly and accurately represented the crime scene on the night of the murder even though defendant claimed the photographs were taken at a different time and under different weather conditions from the night of the murder; the absence of a car which another witness claimed had been parked at the murder scene was not a basis for holding as error the admission of the photographs; a photograph of the alleged intended victim introduced to illustrate testimony was relevant; and the court did not err by instructing the jury on differences in photographs of the crime scene taken five months later and the crime scene on the night of the murder.

**19. Criminal Law § 33.3— murder and assault—evidence about intended victim— relevant**

The trial court did not err in a first degree murder prosecution by allowing an officer to testify that he had unsuccessfully searched for the alleged intended victim to serve a subpoena, or by allowing another witness to testify that the alleged intended victim had not returned to his barbershop for work and had been seen only one time thereafter. It was both relevant and proper to explain why a prominent character in the State's theory of the case was not present at trial.

**20. Criminal Law § 99.7— court's failure to admonish witness about joke—no error**

The trial court in a first degree murder trial did not err by not instructing an officer not to make jokes on the witness stand where the court felt that the officer's answer had been responsive to the State's questions and that the resulting laughter was accidental, and stated that he would admonish the witness if he made a joke.

**21. Criminal Law § 113.6— charge that evidence should be considered against one defendant—immediate correction—no error**

The trial court did not improperly express an opinion in a murder prosecution and defendant's motion for a mistrial was properly denied where the court instructed the jury that some of the evidence should be considered against one defendant and not the other, then corrected the instruction to say that the evidence should only be considered in one defendant's case. Any possible error in the phrasing of the first instruction was cured by the immediate explanatory instruction. N.C.G.S. 15A-1222.

**22. Criminal Law § 42.4— testimony that defendant seen with pistol—same kind used in shooting—admissible**

The trial court did not err in an assault and murder prosecution by allowing the witness to testify that he had seen one defendant with the kind of pistol used in the shooting several times in the months before the shooting. It was clearly relevant to the State's theory of the case that defendant Carraway possessed a .44 caliber pistol and that defendant Rogers had been seen with her pistol.

**23. Criminal Law § 42.4— assault and murder—whether alleged intended victim had ever been seen with gun—not admissible**

The trial court did not err in an assault and murder prosecution by sustaining the State's objections to one defendant's question asking whether the witness had ever seen the alleged intended victim with the gun. Defendant's questions included no time reference to show relevancy to the case, and defendant was allowed to pose a rephrased question seeking the same information.

**24. Criminal Law § 102.4— counsel's comment on evidentiary ruling—no instruction—no error**

The trial court did not err in an assault and murder prosecution by failing to instruct the jury about the prosecutor's comment that the court was free to sustain defendant's objection because he had already made his point by asking the question where the comment was made during a bench conference out of the hearing of the jury.

**25. Homicide § 21.1; Assault and Battery § 14.2— assault and murder—evidence sufficient**

The trial court did not err by failing to dismiss charges of murder and assault for insufficient evidence where the eyewitness testimony, when taken with other corroborative evidence offered by the State, was sufficient substantial evidence from which the jury could reasonably infer that defendant Rogers as principal and defendant Carraway as an aider or abettor committed the first degree murder of Charles Hall and the assault with a deadly weapon with intent to kill of George Edwards.

**26. Criminal Law § 113.1— assault and murder—State's closing argument—no error**

The trial court did not err in a prosecution for assault and murder by not instructing the jury to disregard portions of the State's closing argument where all of the contested statements had a basis in evidence presented at trial and the court twice within the State's argument reminded the jury that they should be guided by their own recollection of the evidence and not counsel's rendition.

**27. Criminal Law § 102.6— assault and murder—defendant's closing argument—State's objection properly sustained**

The trial court did not err in an assault and murder prosecution by sustaining the State's objection to defense counsel asking the jury during closing argument if they would like to be convicted on the eyewitness's testimony after defense counsel had highlighted contradictions and inconsistencies in the eyewitness's testimony. The trial judge properly exercised his discretion by preventing defense counsel from suggesting that the jurors reach their verdict by placing themselves in defendant Rogers' position rather than by deciding the case from the facts and inferences which could be drawn from the evidence.

**28. Criminal Law § 138.29— finding in aggravation—perjury—error**

The trial court erred when sentencing defendant Carraway for assault with a deadly weapon with intent to kill by finding in aggravation that defend-

ant Carraway had committed perjury and that defendant had entered into a conspiracy where the court's finding of perjury was not supported by a preponderance of the evidence and where there was no evidence that defendants had conspired to carry out the crimes for which they were convicted.

**29. Criminal Law § 135 — capital sentencing — jury argument — no error**

The trial court did not abuse its discretion by not correcting the State's argument in the capital sentencing portion of a murder trial where the State argued that the intended victim was someone other than the actual victim, and referred to biblical passages that encouraged Christians to obey the law.

**30. Criminal Law § 135.8 — murder — course of conduct aggravating circumstance — evidence sufficient**

The trial court in a murder prosecution properly submitted the course of conduct aggravating factor to the jury and properly denied defendant Rogers' later motion to set aside the jury's finding of this aggravating circumstance where the State presented substantial evidence that defendant Rogers fired his weapon at George Edwards after killing Charles Hall and the jury, by returning guilty verdicts, had found beyond a reasonable doubt that defendant Rogers had committed Hall's murder and the assault against Edwards. N.C.G.S. 15A-2000(e)(11).

**31. Criminal Law § 135.10 — murder — death sentence disproportionate**

The death sentence imposed in a first degree murder prosecution was excessive and disproportionate where defendant's crime did not rise to the level of those murders in which the death sentence was approved upon proportionality review and the slaying in this case did not contain the viciousness and cruelty present in other cases in which the only aggravating circumstance was course of conduct. N.C.G.S. 15A-2000(d)(2).

**32. Criminal Law § 135.10 — murder — death sentence — judgment signed and entered — no error**

The trial court did not err in a prosecution for assault and murder by signing and entering judgments against defendant Rogers or by denying defendant Carraway's motion to set aside the verdict where the evidence was sufficient to support the verdict against defendant Carraway, there was no prejudicial error in the guilt phase of either charge against Rogers, defendant Rogers did not assign error to the sentence imposed against him for assault, and even though the death sentence was vacated, the trial judge was bound to follow the jury's recommendation and did not err by entering judgment. N.C.G.S. 15A-2000.

APPEAL as of right by each defendant pursuant to N.C.G.S. § 7A-27(a) from judgments entered by *Small, J.*, at the 5 March 1984 Criminal Session of WAYNE County Superior Court. Defendants' motions to bypass the North Carolina Court of Appeals on the non-Class A felonies were allowed on 22 June 1984 as to defendant Rogers and on 16 August 1984 as to defendant Carraway.

Defendants were charged in indictments, proper in form, with first degree murder and assault with a deadly weapon with intent to kill.

The State's evidence during the guilt-innocence phase of this bifurcated trial tended to show that Charles Thurman Hall was fatally shot shortly after midnight on 21 September 1983 in an apartment building parking lot at 611 East Elm Street in Goldsboro.

State's witness Captain Floyd Hobbs of the Goldsboro Police Department responded to the call concerning the East Elm Street shooting at 12:07 a.m. He proceeded to 611 East Elm Street and found the victim, Charles Hall, lying in the parking lot behind a pickup truck parked in front of Apartment 611-A. Captain Hobbs stated that the 611 East Elm Street apartment building is a two-story brick building containing four separate apartments. These apartments are fronted by a large parking area which adjoins Elm Street. Apartment 611-A is the westernmost apartment. The western boundary of the apartment parking lot is marked off by a chain link fence. Apartment 611-D is located on the eastern side of the apartment building. Washington's Shoe Shop is located in the extreme eastern portion of the parking lot. Across Elm Street immediately behind a small gas station, there is a larger building which houses, among other tenants, the Pink Panther Lounge. Captain Hobbs noted that to the left of the pickup truck, beside the fence, there was an automobile and to the right of the truck, in front of Apartment 611-B, a yellow Lincoln Continental was parked. Hobbs observed a bullet hole in the trunk lid of the Lincoln and a bullet fragment lying near its flat left front tire. Goldsboro Police Identification Officer Andrew Pinto testified that he removed the Continental's left front tire and found what appeared to be a bullet fragment inside.

Jeffrey Dekeyser, testifying for the State, related that on 20 September 1983 between 11:00 and 11:15 p.m. he drove his car to Blondie Coley's apartment to attend a party. Ms. Coley resided in Apartment 611-A East Elm Street. Dekeyser stated that he parked his car in front of Apartment 611-A between the fence and the pickup truck. When he arrived, several people were standing outside the front door of Ms. Coley's apartment. Dekeyser testified that after parking his car he walked behind the apart-

ment building to Ms. Coley's back door. He found more people socializing outside that door. Dekeyser managed to walk just inside the back door but decided to go back outside after seeing the crowd within. While standing in the doorway, Dekeyser saw George Edwards and Charles Hall near the front door making their way outside.

Dekeyser testified that he then walked to the front of the apartment and stood at the southwest corner of the building. He noticed Edwards and Hall talking to each other while standing in the parking lot a few feet behind the pickup truck parked in front of 611-A. Shortly thereafter, Dekeyser observed a 1983 white Cougar turn off Elm Street and pull into the parking lot. When the car stopped and the passenger door opened, the interior light came on enabling Dekeyser to recognize defendant Carraway as the driver of the car and defendant Rogers as the passenger who was leaving the vehicle. Rogers stood up, pulled his coat back, and walked around the rear of the car towards Hall and Edwards. Rogers walked to within three or four feet of the two men and spoke to them. Dekeyser testified that Hall, by his hand movements, looked as if he were trying to explain something to Rogers. Dekeyser stated that "then, just like out of nowhere," he saw Rogers pull out a large caliber pistol and begin to shoot.

When the first shot was fired Hall fell to the ground, and as Edwards ran between the pickup truck and the Continental a second shot was fired. At this point the witness Dekeyser ran behind the apartment building through a broken place in the fence to a carwash located on the west side of the apartment building. He there observed the Cougar going west on Elm Street. Dekeyser also testified that he heard a total of three shots fired.

SBI firearms expert James H. Evans testified that he performed tests on the bullet removed from the back seat of the Continental and the bullet found at the scene by an investigating officer. Agent Evans found both bullets to be .44 caliber jacketed hollow-point bullets and concluded that both bullets were fired from the same firearm. Sergeant C. E. Boltinhouse of the Goldsboro Police Department testified that after defendant Carraway had been arrested and released on bond she reported a .44 caliber magnum pistol missing from her house.

The State produced other evidence tending to show that Rogers and Edwards had argued on several previous occasions and that Rogers had physically threatened Edwards on one of those occasions at Edwards' Barber Shop. The State also offered evidence which revealed that Rogers had been looking for Edwards at the Pink Panther Lounge prior to the shooting and had continued to look for Edwards after the shooting. The State's case went to the jury on the theory that Rogers, with Carraway's knowing assistance, mistakenly shot Hall while attempting to murder Edwards.

Both defendants testified in their own defense. Defendant Carraway stated that on 20 September 1983 she and defendant Rogers returned to Goldsboro from Wilmington. That evening, they left her 201 North George Street residence to buy some items for a sick friend. They drove first to the Jazz-Mo Club to talk with Carraway's mother who worked there. Outside the Club, Carraway bought a .357 magnum pistol from Buster King because he was selling it for a good price. Without going inside to speak to her mother, Carraway then left and rode with Rogers to a grocery store where she bought some honey and lemon for her friend.

They thereafter proceeded to the service station located next to the Pink Panther Lounge to put some air in one of the Cougar's tires. Upon finding the station closed, Rogers drove the Cougar to the 611 East Elm Street parking lot and parked near Apartment 611-C beside the Continental. Rogers got out of the car which he had backed into a parking space and walked around the car, opening Carraway's door. Rogers and Carraway had started back towards the Pink Panther Lounge when Edwards approached Rogers and asked for a loan of money. When Rogers refused, Hall appeared and stated: "Man if you've got any sense you'll give him all your money." When Rogers refused again, Hall pulled out a gun and began shooting. Carraway testified that the first shot hit the Continental and that she and Rogers ducked in between the Continental and the Cougar. Carraway stated that she heard a second shot fired and at that point reached into her pocketbook and pulled out her recently purchased .357 magnum. Carraway testified that she fired the weapon, then ran out of the parking lot towards Elm Street. At that time, she did not know whether she had hit Hall. Rogers then slipped into the Cougar

and picked Carraway up on Elm Street. The couple returned to her residence and left for Myrtle Beach where they intended to be married.

By his testimony defendant Rogers substantially corroborated Carraway's story. He explained that he parked the car at 611-C because he did not want it to get scratched while they briefly went into the Pink Panther Lounge for a beer. Rogers also denied arguing with George Edwards at his barbershop or looking for Edwards on the night before and the morning after the shooting.

Defendants also offered the testimony of Jeffrey Fennell who stated that at approximately 8:30 or 9:30 p.m. on 20 September 1983 he was at Ed Lewis's house with George Edwards and Charles Hall. He testified that Charles Hall was "acting wild" and had a weapon in his belt.

Both the State and defendants presented evidence on rebuttal. At the conclusion of all the testimony, and after counsel's closing arguments and the trial court's instructions to the jury, the case was submitted to the jury. The jury returned verdicts finding both defendants guilty of the first degree murder of Charles Hall and guilty of assault with a deadly weapon with intent to kill George Edwards.

At the sentencing phase of the trial, the court submitted the following aggravating circumstance against each defendant for the jury's consideration: the murder for which the defendant stands convicted was part of a course of conduct in which the defendant engaged and which included the commission by the defendant of other crimes of violence against another person or persons. N.C.G.S. § 15A-2000(e)(11) (1983). The court also submitted to the jury two mitigating factors for defendant Rogers and eight mitigating factors for defendant Carraway. The jury retired and after due deliberation, returned a recommendation of death as to defendant Rogers and life imprisonment for defendant Carraway for the murder of Charles Hall. The court imposed judgments accordingly and further imposed a ten year sentence for defendants' assault convictions to run consecutively with the sentences imposed for the murder.

On appeal, each defendant has brought forward numerous assignments of error. When possible, similar assignments will be discussed together.

*Lacy H. Thornburg, Attorney General, by J. Michael Carpenter, Special Deputy Attorney General, for the State.*

*Herbert B. Hulse, Attorney for defendant-appellant Rogers.*

*Louis Jordan and Michael A. Ellis, Attorneys for defendant-appellant Carraway.*

BRANCH, Chief Justice.

I. GUILT-INNOCENCE PHASE

A. *Pretrial Concerns*

[1] Defendant Carraway filed a pretrial *pro se* motion requesting an internal investigation into the conduct of Sergeant C. E. Boltinhouse, a detective with the Goldsboro Police Department. Her motion alleges that Sergeant Boltinhouse caused Jeffrey Dekeyser to fabricate his account of the 21 September Elm Street murder. Defendant Carraway's first assignment of error contends that the trial court erred in failing to order the requested investigation.

This assignment of error, and others raised by both defendants, are based on the conflicting statements given to the police and defendants by Jeffrey Dekeyser, the only eyewitness to the murder. According to the State, Dekeyser informed the police only hours after the 21 September shooting that defendants were involved in the murder of Charles Hall at 611 Elm Street. However, on 13 November 1983, Dekeyser, who was taken by Carraway to her attorney's office, said that he did not know defendant Rogers and did not see the 611 Elm Street shooting. At trial, Dekeyser admitted he had lied to Carraway and her attorney.

We hold the trial court correctly refrained from authorizing an investigation of Sergeant Boltinhouse's conduct. Besides the allegations contained in the motion, defendant Carraway failed to bring forward any evidence that tended to show that Sergeant Boltinhouse had improperly influenced Dekeyser's recollection of the events on the night of the shooting. Furthermore, we note that Sergeant Boltinhouse testified at trial and was subjected to

fruitless cross-examination concerning his alleged inappropriate behavior. This assignment of error is overruled.

[2]   Defendant Carraway next assigns as error the denial of her motion to suppress the statements she made to FBI agents when apprehended in Maryland. The defendant contends that she did not waive her rights and that her statements were involuntarily made because she was sleepy and tired when arrested. After a *voir dire* hearing, the trial court found that defendant Carraway was advised of her *Miranda* rights when taken into custody. At that time, she did not request an attorney and voluntarily answered the agent's biographical questions. During the ten-minute ride to their FBI office, defendant Carraway closed her eyes, but appeared to the agents to be at all times in full command of her physical and mental faculties. Upon their arrival, Carraway told the agents that she had been traveling with defendant Rogers for the past few months, that she owned a .44 caliber weapon, and that she did not know Charles Hall. At that point, she exercised her right to an attorney and the interview stopped.

Initially, we note that defendant failed to except to any of the findings of fact. When no such exceptions are taken, the findings are presumed to be supported by competent evidence. *State v. Perry*, 316 N.C. 87, 340 S.E. 2d 450 (1986). Further, our examination of the evidence on *voir dire* discloses plenary competent evidence to support the findings. These findings in turn support the trial court's conclusions of law and ruling denying the motion to suppress. *State v. Thompson*, 287 N.C. 303, 214 S.E. 2d 742 (1975), *death penalty vacated*, 428 U.S. 908, 49 L.Ed. 2d 1213 (1976).

Finally, we have previously held unpersuasive Carraway's remaining contention that a defendant's refusal to sign the *Miranda* rights waiver form is a bar to finding that an oral waiver has occurred. *See State v. Connley*, 297 N.C. 584, 256 S.E. 2d 234, *cert. denied*, 444 U.S. 954, 62 L.Ed. 2d 327 (1979).

B.   *Jury Selection*

[3]   Both defendants argue that the trial court committed prejudicial error by denying their motions to prohibit the prosecution from "death qualifying" the jury before the guilt-innocence phase of the trial. They contend that death qualified juries are un-

constitutional because they are prosecution prone and more likely to convict a defendant. This Court has repeatedly held that the North Carolina jury process in first degree murder cases is constitutional. *See State v. Hayes*, 314 N.C. 460, 334 S.E. 2d 741 (1985); *State v. Vereen*, 312 N.C. 449, 314 S.E. 2d 250, *cert. denied*, --- U.S. ---, 85 L.Ed. 2d 526 (1985); *State v. Noland*, 312 N.C. 1, 320 S.E. 2d 642 (1984), *cert. denied*, --- U.S. ---, 84 L.Ed. 2d 369 (1985). We decline to reconsider our position.

[4] Defendants also contest the denial of their motions to prohibit the State from peremptorily challenging black jurors. Defendants alleged that the district attorney has shown "a pattern of discrimination against black jurors by peremptorily challenging them" in criminal cases and moved that the State be prohibited from challenging black jurors. Neither defendant offered any evidence in support of the motion.

A peremptory challenge may be exercised without a stated reason and without being subject to the control of the court. *State v. Jenkins*, 311 N.C. 194, 204, 317 S.E. 2d 345, 351 (1984). The right to challenge veniremen peremptorily is equally bestowed on the State and defendants by N.C.G.S. § 15A-1217. This contention is without merit.

[5] Defendant Carraway assigns as error the State's use of a peremptory challenge of a black juror who had already been passed by the State and defendants. During *voir dire*, the State asked Thelbert Harvey whether he or any member of his family had ever been charged with a serious offense. Neither Mr. Harvey nor any of the other jurors being questioned at that time responded. The State tendered Mr. Harvey to the defendants who first challenged him for cause, then peremptorily. Their motions to excuse Mr. Harvey as a juror for cause were denied. Their peremptory challenges were likewise unsuccessful in removing Mr. Harvey because both defendants had exhausted all their peremptory challenges.

During a short recess and before the jury had been impaneled, the State obtained information that Mr. Harvey's two sons had been convicted of shoplifting and felonious breaking and entering. An evidentiary hearing was conducted and the State produced a witness who verified the State's information. The trial court recalled Mr. Harvey and questioned him concerning his

sons' criminal records. Mr. Harvey admitted that his sons had been convicted of these crimes. At that time, the State exercised one of its remaining peremptory challenges and Mr. Harvey was excused.

We find that this procedure fully comported with the controlling statute, N.C.G.S. § 15A-1214(g). This statute provides that after a juror has been accepted by a party, and before the jury has been impaneled, a judge may examine a juror if it is discovered that this juror has made an incorrect statement during *voir dire*. The decision to reopen the examination of a juror previously accepted by the parties is within the sound discretion of the trial court. *State v. Freeman*, 314 N.C. 432, 333 S.E. 2d 743 (1985). However, once the examination of a juror has been reopened, "the parties have an absolute right to exercise any remaining peremptory challenges to excuse such a juror." *Id.* at 438, 333 S.E. 2d at 747. In the present case as in *Freeman*, the question concerning the juror's truthfulness on *voir dire* arose before a full jury had been impaneled. We hold that the trial court did not abuse its discretion in reopening the *voir dire* examination of Mr. Harvey based on the evidence produced by the State. Consequently, the State was entitled to exercise one of its remaining peremptory challenges to remove Mr. Harvey.

[6] Defendant Carraway further contends that the trial court improperly denied her motion for an additional peremptory challenge. She argues that because Mr. Harvey was peremptorily challenged, rather than excused for cause, she has been prevented from having his removal reviewed on appeal. She maintains, therefore, that she should have been entitled to an additional peremptory challenge. This novel argument is unpersuasive. Pursuant to N.C.G.S. § 15A-1217(a), the State and the defendant in a capital case are each allowed fourteen peremptory challenges. Contrary to defendant Carraway's contention, the use of a peremptory challenge by one party does not unfairly prejudice the opposing party's position in the jury selection process. This contention is without merit.

[7] Defendants next assign as error the trial court's denial of their motions for an individual *voir dire* and sequestration of the jurors during the jury selection proceedings. It is well settled that these motions are addressed to the sound discretion of the

court and will not be disturbed absent an abuse of discretion. *State v. Barfield,* 298 N.C. 306, 259 S.E. 2d 510 (1979), *cert. denied,* 448 U.S. 907, 65 L.Ed. 2d 1137 (1980). Defendants argue that prospective jurors in a capital case are improperly influenced during a collective *voir dire* by the repetitious questions concerning capital punishment and the positive responses given by other veniremen. Defendants assert that jurors are left with the impression that the accused is guilty and that the penalty phase of the trial will undoubtedly be reached. We reject this argument as speculative as we have rejected previous arguments dealing with the alleged contamination of jurors who are chosen pursuant to a collective *voir dire. E.g., State v. Ysaguire,* 309 N.C. 780, 309 S.E. 2d 436 (1983); *State v. Brown,* 306 N.C. 151, 293 S.E. 2d 569, *cert. denied,* 459 U.S. 1080, 74 L.Ed. 2d 642 (1982). Our review of the *voir dire* proceedings fails to reveal any abuse of discretion by the trial court in denying defendants' motions.

[8] Defendant Carraway also claims · that the trial court improperly expressed an opinion by its questioning of a prospective juror who intimated that he could not vote for a verdict which would result in the imposition of the death penalty. The court's questions to this juror were made in an attempt to clarify his actual position on the issue of capital punishment. Here, since the State was entitled to "death-qualify" the jury, we fail to see how the trial judge's inquiry or his ruling excusing the juror for cause could be construed as an improper expression of an opinion which might have unfairly influenced the views of the other jurors. *State v. Greene,* 285 N.C. 482, 206 S.E. 2d 229 (1974).

[9] Defendant Carraway next contends that because her *voir dire* examination of the jurors followed the State's and Rogers' examinations, she was denied her right to examine a full panel from which to select jurors and exercise her challenges. We disagree. The procedure followed in this case was in full accord with the provisions of N.C.G.S. § 15A-1214. Her statutory rights were not infringed because others had removed jurors before she began her examination. She still had the right to exercise her fourteen peremptory challenges and to exert her right to challenge for cause. Except for her bald assertion of error, defendant has failed to furnish authority or plausible argument to show that the statutory scheme or the judge's discretionary ruling on the

order of examination violated her constitutional or statutory rights. This assignment of error is without merit.

**[10]** Defendant Carraway cites as error the trial court's alleged refusal to allow her to ask prospective jurors during *voir dire* "nondeath qualifying" questions to counter the State's "death qualifying" questions. In the two instances highlighted in her brief, the juror was asked whether she could conceive of a circumstance where she would impose a life sentence rather than the death penalty and whether she would automatically vote for the death penalty upon the return of a guilty verdict.

This Court has previously recognized that "both the State and defendant have a right to question prospective jurors about their views on the death penalty so as to insure a fair and impartial verdict." *State v. Adcock*, 310 N.C. 1, 10, 310 S.E. 2d 587, 593 (1984). However, the trial court is vested with broad discretion in controlling the extent and manner of the inquiry into prospective jurors' qualifications in a capital case. Absent an abuse of discretion, the trial judge's rulings in this regard will not be disturbed. *State v. Wilson*, 313 N.C. 516, 330 S.E. 2d 450 (1985). Our review of the *voir dire* proceedings reveals that defendant Carraway was clearly afforded an opportunity to question each juror on his or her death penalty views. Because this defendant has failed to show any abuse of discretion, this assignment of error is overruled.

**[11]** The final assignments of error dealing with jury selection are brought forward by defendant Carraway. In one assignment, she objects to the State's use of "fully satisfied and entirely convinced" instead of "reasonable doubt" in its questions to prospective jurors concerning their ability to return a guilty verdict. Defendant Carraway contends that the phrase used by the State is an inadequate statement of the law. We disagree. The North Carolina Pattern Jury Instructions for Criminal Cases, adopting the definition developed in our case law, define reasonable doubt as "proof that fully satisfies or entirely convinces you of the defendant's guilt." N.C.P.I.—Crim. 101.10. *See also State v. Hammonds*, 241 N.C. 226, 232, 85 S.E. 2d 133, 138 (1954). We hold that the trial court properly overruled defendant Carraway's objection to the State's question.

**[12]**   She also contends that the trial court improperly sustained the State's objections to their questions asking prospective jurors whether the fact that she called fewer witnesses than the State would make a difference in their decision as to her guilt. We hold that the trial court properly sustained the objections. Hypothetical questions which attempt to "stake out" a juror's future course of action are improper. *State v. Vinson*, 287 N.C. 326, 215 S.E. 2d 60 (1975), *death penalty vacated*, 428 U.S. 902, 49 L.Ed. 2d 1206 (1976).

### C.   *Evidentiary Questions*

**[13]**   Defendant Rogers contends that the trial court improperly allowed the State in bad faith to repeatedly elicit testimony which was without any basis in fact. Specifically, this assignment of error deals with a dispute in the evidence as to whether or not Jeffrey Dekeyser's car was parked at 611-A East Elm Street between 11:15 p.m. and 3:00 a.m. on the night of the shooting. Rogers argues that because the State's other witnesses did not see Dekeyser's car or do not remember seeing his car that night, the trial court should not have allowed Captain Floyd Hobbs of the Goldsboro Police Department to testify that he saw Dekeyser's car at the place and during the time Dekeyser had indicated it was there.

This contention has no merit. Admittedly, the presence of the car at the scene of the crime is an important fact because it tends to substantiate Dekeyser's claim that he witnessed Charles Hall's murder. Yet, contradictions in the evidence are matters for the jury to resolve. *State v. Brown*, 310 N.C. 563, 313 S.E. 2d 585 (1984). The resolution of this dispute largely turned on the credibility the jury chose to give Dekeyser's and Hobbs' testimony. The credibility of witnesses is also a determination for the jury. 12 Strong's N.C. Index 3d *Trial* § 18.2 (1978). Consequently, we hold the trial court properly allowed Captain Hobbs to relate his recollection of the crime scene on the night in question.

**[14]**   Defendant Rogers next asserts that the trial judge committed reversible error when he directed a series of questions to Dekeyser during the *voir dire* hearing held to determine the admissibility of Dekeyser's identification of the defendants. Rogers argues that the court's conduct was unfair and indicated its bias in favor of the State. He maintains that he was prejudiced by the

court's examination of Dekeyser because his answers constituted the findings of fact in the order admitting his in-court identification of the defendants.

The hearing where the challenged examination occurred was conducted out of the presence of the jury. N.C.G.S. § 15A-1222, which forbids the expression of an opinion by the trial court, is inapplicable when the jury is not present during the questioning. *State v. Bright*, 301 N.C. 243, 271 S.E. 2d 368 (1980). Furthermore, it is well recognized that a trial judge has a duty to question a witness in order to clarify his testimony or to elicit overlooked pertinent facts. *State v. Efird*, 309 N.C. 802, 309 S.E. 2d 228 (1983).

Here, the trial court's inquiry was necessary and proper. It is evident from the record that Dekeyser, the State's only eyewitness, had difficulty in understanding some of the prosecution's questions and in responding clearly. In order to determine the admissibility of his in-court identification, the trial court wisely decided to examine the witness to clarify his testimony. We hold that the trial court's conduct was entirely proper.

**[15]** Defendant Rogers also attacks the trial court's order allowing Dekeyser's in-court identification on the basis that Dekeyser's testimony was incredible and conflicting.

> When a motion to suppress identification testimony is made, the trial judge must conduct a voir dire hearing and make findings of fact to support his conclusion of law and ruling as to the admissibility of the evidence. When the facts found are supported by competent evidence, they are binding on the appellate courts.

*State v. Freeman*, 313 N.C. 539, 544, 330 S.E. 2d 465, 470 (1985). Although Dekeyser did make a contrary statement prior to trial, his in-court testimony was consistent and in accordance with his first statement to police. The evidence elicited on *voir dire* fully supports the trial court's findings of fact and conclusions of law. We hold that the trial court properly admitted Dekeyser's in-court identification of the defendants.

**[16]** Both defendants further contend that the trial court erred when it failed to strike *ex mero motu* Dekeyser's entire testimony because it lacked credibility. Again, defendants have confused the

roles of judge and jury. We agree that Dekeyser was a troublesome witness. He was often unclear and an easy target for impeachment in view of his prior inconsistent statement to defendant Carraway's attorney that he had no knowledge of the Elm Street slaying. Yet, in spite of Dekeyser's overall shortcomings, he did manage to relate to the jury Charles Hall's murder as he saw it on 21 September 1983. Moreover, his testimony was corroborated in several crucial respects (Captain Hobbs' confirmation of the presence of Dekeyser's car at the scene; Blondie Coley's verification that after the shots were fired a figure got into the passenger side of a light-colored car which then drove away; and Robert Holmes' affirmation that defendant Rogers was looking for George Edwards after the murder at the corner of James and Pine).

In any event, Dekeyser's prior inconsistent statement did not cancel his testimony at trial. This statement as well as the seemingly questionable portions of his testimony were matters bearing on the weight the jury would give Dekeyser's testimony, not on its admissibility. *See State v. Wagoner*, 249 N.C. 637, 107 S.E. 2d 83 (1959).

[17] Defendant Rogers next asserts that the trial court improperly admitted the testimony of Robert Holmes. Rogers assails Holmes' testimony on two grounds. First, he argues that Holmes should not have been allowed to identify him in court as the man he talked with on 21 September 1983 on the corner of James and Pine. Holmes testified on *voir dire* that he saw Rogers three times on the night of the murder. He stated that he and Jeffrey Dekeyser saw Rogers sitting in his car at the corner of James and Pine after the murder of Charles Hall. According to Holmes, Dekeyser informed him that Rogers "was supposed to have shot" Hall. Holmes, out of curiosity created by this statement, then walked over to Rogers' car and spoke with him for several minutes. Later that night, he passed Rogers in the same car driving on other Goldsboro streets. Holmes further testified that based on his recollection of the events of that night he could identify Rogers as the same man with whom he talked on 21 September 1983. Clearly, the trial court's findings of fact which incorporated this portion of Holmes' testimony were supported by competent evidence and thus binding upon this Court. *State v. White*, 307 N.C. 42, 296 S.E. 2d 267 (1982). We hold that the trial

judge's conclusions are supported by these findings and therefore he properly admitted Holmes' in-court identification of defendant Rogers.

Secondly, defendant Rogers asserts that Holmes was improperly allowed to relate Dekeyser's statement to him that Rogers had shot Hall. The statement was admitted for the purpose of corroborating Dekeyser's earlier testimony as to what he had told Holmes on the corner of James and Pine on the night of the murder. We agree that this testimony was improperly admitted for this purpose. The record reveals that although Dekeyser testified in this manner on *voir dire*, he did not repeat this statement while testifying before the jury. Therefore, this portion of Holmes' testimony did not corroborate Dekeyser's testimony.

Although this statement was improperly admitted on this basis, we hold its admission was harmless in light of the fact that it was admissible for another purpose. Statements which are offered for any purpose other than for proving the truth of the matter stated are not objectionable as hearsay. *State v. Irick*, 291 N.C. 480, 231 S.E. 2d 833 (1977). "The statements of one person to another are admissible to explain the subsequent conduct of the person to whom the statement was made." *State v. White*, 298 N.C. 430, 437, 259 S.E. 2d 281, 286 (1979). Holmes clearly testified that Dekeyser's statement about Rogers made him curious and motivated him to cross the street to talk with Rogers. In order to start a conversation with him, Holmes lied and asked if Rogers wanted to buy some drugs. Later, through this conversation, Holmes learned that Rogers was still looking for Edwards. We hold Dekeyser's statement to Holmes was admissible to explain Holmes' subsequent conduct. It was not offered to prove Rogers did, in fact, murder Hall, but to reveal why Holmes went over to talk with Rogers after the shooting.

[18]  The next several assignments of error posing evidentiary questions deal with the admission into evidence of certain photographs offered by the State. Defendant Carraway first objects to the admission into evidence of Exhibits 2 and 3. These exhibits were photographs of the 611 East Elm Street apartment building from different angles and were admitted for purposes of illustrating the witness's testimony. Carraway contends that these photographs, taken during the day and under rainy conditions,

could not be used to illustrate the witness's testimony because the murder occurred at night and under a clear sky.

We reject this contention. "A photograph of the scene of a crime may be admitted into evidence if it is identified as portraying the locale with sufficient accuracy." *State v. Smith*, 300 N.C. 71, 75, 265 S.E. 2d 164, 167 (1980). As long as the witness is able to testify that the photograph is a fair and accurate representation of the scene, it is irrelevant that he did not take the photograph or that it was not made at the time of the event to which it relates. *Id.* at 75, 265 S.E. 2d at 168. *See also State v. Lester*, 289 N.C. 239, 221 S.E. 2d 268 (1976) (daytime photograph admitted to illustrate testimony of witness who had viewed the scene at night). In the present case, Captain Hobbs, the witness through whom the exhibits were admitted, testified that the photographs fairly and accurately represented the area on the night of the murder. We hold that State's exhibits 2 and 3 were properly admitted for illustrative purposes.

Although defendant Carraway has also excepted to the court's admission into evidence of State's exhibit 4, she has presented no argument to this effect in her brief. Rather, Carraway argues that Dekeyser's testimony that he parked his car in front of Apartment 611-A and west of the Ford pickup truck should not have been allowed because exhibit 4, a photograph of the front of 611-A and 611-B taken on the night of the murder, reveals that his car was not there during the specified time period.

Clearly, this argument is no basis for holding as error the admission of a properly authenticated photograph. This exhibit was not admitted in connection with Dekeyser's testimony, but was admitted through Police Officer Pinto, the photographer, for use during his testimony. This assignment of error is overruled.

Exhibit 18, another photograph taken and authenticated by Officer Pinto, is the subject of defendant Carraway's next assignment of error. Although she does not object to the admission of the exhibit, Carraway contends that the trial court erred in its instruction to the jury upon receiving it into evidence. This photograph of the intersection of Elm and Slocumb Streets was taken during the day five months after the murder and included extraneous vehicles. The trial court, as it admitted the photograph for illustrative purposes, highlighted these differences to the jury

and asked it to bear them in mind when considering the exhibit. We hold this instruction was entirely proper.

Defendant Carraway further assigns as error the trial court's ruling admitting the photograph of George Edwards into evidence. The State at trial contended that Edwards was the intended murder victim. He was also the alleged victim of the assaults with a deadly weapon with intent to kill. Captain Hobbs testified that he had known Edwards for twenty years and that he recognized State's exhibit 1 as a photograph of Edwards. The photograph was offered to illustrate Hobbs' testimony with regard to the people present at the murder scene when he arrived. Contrary to Carraway's argument, there was substantial evidence that Edwards was at 611-A Elm Street with Hall at the time of his murder and that Edwards was also assaulted at that time. There was further evidence that Rogers had searched for Edwards before and after Hall's slaying. Because Edwards was an essential part of the State's trial theory, his picture was surely relevant. Based on the foundation laid through Hobbs' testimony, we hold the photograph was properly admitted.

[19] In a related assignment of error, defendant Carraway argues that the trial court improperly allowed the testimony of Police Officer Perry Sharp that he had searched for Edwards, without success, in order to serve him with a subpoena for trial. Carraway asserts that this evidence was elicited in order to excite the passion and the prejudice of the jurors who essentially were led to believe that Edwards, out of fear, had disappeared after the shooting. We disagree. Since Edwards was a prominent character in the State's theory of the case, it was both relevant and proper for the prosecution to explain why this witness was not present at trial.

Furthermore, State's witness, William Artis, similarly testified, without objection, that after the shooting Edwards did not return to his barbershop for work and was only seen one time thereafter. Therefore, Carraway's objection to Sharp's testimony had been waived due to the fact that Artis's evidence of the same import had been previously admitted without objection. *State v. Jenerett*, 281 N.C. 81, 187 S.E. 2d 735 (1972). This assignment is overruled.

Defendant Carraway also contends that the trial court improperly overruled her objections and allowed Captain Hobbs to testify that he found a bullet fragment near the flat tire of the Continental. The State, on the other hand, correctly points out that precisely the same evidence was introduced earlier in Captain Hobbs' testimony without objection. Therefore, we hold that defendant Carraway waived her right to object to this evidence. *Id.*

[20] The next assignment of error presented by defendant Carraway is likewise without merit. She argues that the trial court erred by failing to instruct Officer Pinto as well as other witnesses that they should refrain from making jokes while on the witness stand. The following exchange occurred during defendant Rogers' cross-examination of Pinto:

Q. And what is the date that's written on the envelope in your handwriting?

A. 9-26-83.

Q. Who typed up the envelope, the other information that is on the outside of that envelope?

A. I did.

Q. And who typed 9-6-83 on there?

A. 9-6, that was me.

Q. Was that an old envelope back from September 6th?

A. No, I'm just a good typist.

We do not find that this testimony reflects that Officer Pinto was attempting to be humorous or was making light of the defendant's plight. Further, upon defendant Carraway's objection, the trial judge stated that if the witness made a joke, he would admonish him. However, the court felt Pinto's answer was responsive to the State's questions and that the resulting laughter was accidental. Obviously, the trial court was well aware of its duty to control the conduct of the trial and acted accordingly.

[21] In four related assignments of error, defendant Carraway asserts that the trial judge improperly expressed an opinion in violation of N.C.G.S. § 15A-1222 when he instructed the jury that

State v. Rogers

some of the evidence should be considered only against defendant Carraway and not against defendant Rogers. At the time this alleged error occurred, the following exchange took place:

THE COURT: Members of the jury, the evidence or testimony that is about to be elicited from this witness concerning what occurred at the apartment, 201 North George Street, is admissible into evidence solely against the defendant, Belinda Carraway. You shall not consider it in arriving at your verdict as to the defendant, Charles Gene Rogers. All right, you may continue with your examination.

MR. JORDAN: If your Honor please, may we approach the Bench?

THE COURT: Yes, sir.

MR. JORDAN: If my recollection serves me properly, His Honor said it is admissible as evidence solely against Belinda Carraway and we except to that instruction.

THE COURT: All right. Members of the jury, in my instruction to you I said the evidence that is about to be elicited from this witness is to be considered by you solely against the defendant, Belinda Carraway. I should have said it should be considered by you solely in the case of Belinda Carraway because evidence may be for or against someone depending upon the circumstances in which you view it and the weight and credibility you should give it, and sometime evidence is favorable to one side and sometimes it is against that side. At any rate, my instruction is that you consider it in the trial of her case but do not consider it in the trial of the case of Charles Gene Rogers. You may continue your examination.

Initially, we fail to see how the first version of this instruction amounted to a prejudicial expression of opinion by the trial court. In any event, we hold that any possible error which might have occurred due to the phrasing of the first instruction was surely cured by the court's immediate explanatory instruction. We further note that when instructing the jury in a similar manner later in the trial, the court carefully avoided the use of the word "against" to ensure no prejudice resulted and simply stated that

the evidence "is received in the trial of the case of Belinda Carraway" and not in the case against Rogers.

Despite the clarifying second instruction, Carraway nevertheless made a motion for a mistrial on this basis. On appeal, she argues that the trial court erred by denying her motion. A motion for a mistrial is usually addressed to the sound discretion of the trial judge. *State v. McCraw*, 300 N.C. 610, 268 S.E. 2d 173 (1980). In a capital case, however, the trial court may not order a mistrial without the consent of the defendant except in cases of necessity to attain the ends of justice. *State v. Moore*, 276 N.C. 142, 171 S.E. 2d 453 (1970). N.C.G.S. § 15A-1061 requires a trial court to declare a mistrial upon the defendant's motion if during the trial an error occurs "resulting in substantial or irreparable prejudice to the defendant's case." In view of the court's immediate correction and clarification of its first instruction, we conclude that defendant Carraway suffered no substantial or irreparable prejudice to her case. We therefore hold that the trial court properly denied her motion for a mistrial.

[22] By her next assignment of error, defendant Carraway argues that the trial judge improperly allowed Billy King to testify that he saw her with a .44 magnum pistol in May or June of 1983 and again in July of 1983. King further testified that he saw Rogers with the same .44 magnum also in July of 1983. Carraway contends that evidence to the effect that she possessed a gun sometime before the homicide "lacked probative value" because there was "no evidence as to what caliber gun was used to inflict the fatal wound." This statement is incorrect and therefore her reliance on *State v. Gaines*, 283 N.C. 33, 194 S.E. 2d 839 (1973), is misplaced. In *Gaines*, this Court held that the trial court properly excluded irrelevant evidence that a person other than the defendant had been seen walking with a shotgun near the victim's residence three or four days before her attack. This evidence was excluded because it neither tended to inculpate this person or exculpate defendant. *Id.* at 41, 194 S.E. 2d at 845.

In the present case, King's testimony tended to inculpate both defendants. There was testimony from the State's medical expert that the entrance wound in Hall's chest had a one-half inch diameter. Dekeyser testified that Rogers had a "large caliber pistol" in his hand at the time of the shooting. SBI Firearms Ex-

aminer Jim Evans stated that one .44 caliber bullet was recovered from the back seat of the Continental and another one, fired from the same .44 caliber weapon, was found near the Continental's flat left front tire. Thus, it was clearly relevant to the State's theory of the case that Carraway possessed a .44 caliber pistol and that Rogers had been seen with her .44 caliber pistol. Thus, King's testimony was properly admitted into evidence.

[23] Conversely, defendant Carraway asserts that the trial court improperly sustained the State's objections to her questions asking William Artis whether he had ever seen Edwards with a weapon. In the first place, Carraway's questions included no time reference as to when the witness might have seen Edwards with a gun in order to show their relevancy to defendant's case. Secondly, even though these objections were sustained, defendant Carraway, after some rephrasing, was allowed to pose a question seeking the same information. The witness responded: "No, he didn't own a gun. I haven't ever seen him with a gun." Having obtained an answer to her question, defendant Carraway can show no prejudice in the trial court's rulings.

[24] In the final assignment of error under this grouping, defendant Carraway maintains that the trial court erred in failing to instruct the jury about a comment by the prosecutor that the court was free to sustain defendant's objection because he had already made his point by asking the question. We hold that this assignment of error is feckless because the comment was made during a bench conference out of the hearing of the jury.

D. *Sufficiency of the Evidence*

[25] In six assignments of error, defendants Rogers and Carraway contend that the trial court erred in failing to dismiss the charges against them for insufficient evidence. Initially, we note that defendant Carraway's motion to dismiss at the close of the State's evidence was waived when she elected to present evidence. *State v. Leonard*, 300 N.C. 223, 266 S.E. 2d 631, *cert. denied*, 449 U.S. 960, 66 L.Ed. 2d 227 (1980). Therefore, the trial court's ruling on that motion is not part of our review.

Upon a motion to dismiss in a criminal case, the trial judge must consider the evidence in the light most favorable to the State, giving it the benefit of every reasonable inference that

might be drawn therefrom, and leaving all contradictions or discrepancies in the evidence for the jury's resolution. *State v. Brown*, 310 N.C. 563, 313 S.E. 2d 585. The function of the trial court on the motion is to determine whether there is substantial evidence of each element of the offense charged and that defendant is the perpetrator. Substantial evidence is defined as such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *State v. Smith*, 300 N.C. 71, 265 S.E. 2d 164.

Murder in the first degree is the intentional and unlawful killing of a human being with malice and with premeditation and deliberation. N.C.G.S. § 14-17 (1981). *State v. Hamlet*, 312 N.C. 162, 321 S.E. 2d 837 (1984). To be held liable as an aider and abettor, one must be actually or constructively present at the scene, share the criminal intent with the principal, and render assistance or encouragement to him in the commission of the crime. *State v. Williams*, 299 N.C. 652, 263 S.E. 2d 774 (1980); *State v. Birchfield*, 235 N.C. 410, 70 S.E. 2d 5 (1952).

We hold that the eyewitness testimony of the witnesses Dekeyser and Coley, when taken with the other corroborative evidence offered by the State, was sufficient substantial evidence from which the jury could have reasonably inferred that defendant Rogers as the principal and defendant Carraway as an aider and abettor committed the first degree murder of Charles Hall. Further, this evidence was sufficient to repel defendants' motions to dismiss the charges of assault with a deadly weapon with intent to kill George Edwards.

E.   *Jury Arguments*

[26]   Both defendants assert that the trial court erred in failing to instruct the jury to disregard a portion of the State's closing argument which they allege is unsupported by the evidence. The portion of the State's argument in question is as follows: "When the shot was fired Mr. Edwards took off between the pickup truck and the Continental, and by that time Mr. Rogers fired towards Mr. Edwards, causing the weapon to fire, [and] hit the tire." Immediately after the objection, the trial court instructed the jury to be guided by their own recollection of the evidence.

It is well established that counsel should be allowed wide latitude in his argument to the jury. Counsel may argue "the facts in evidence and all reasonable inferences to be drawn therefrom together with the relevant law so as to present his side of the case." *State v. Covington*, 290 N.C. 313, 327-28, 226 S.E. 2d 629, 640 (1976). *See State v. Huffstetler*, 312 N.C. 92, 322 S.E. 2d 110 (1984), *cert. denied*, --- U.S. ---, 85 L.Ed. 2d 169 (1985). Clearly, the questioned argument was based on reasonable inferences which could be drawn from the evidence. With Dekeyser's eyewitness account of the shooting and the physical evidence taken from the Continental, it was surely reasonable to infer that after shooting Hall, Rogers turned and fired at Edwards. Because the State's argument was proper, the trial court correctly refrained from instructing the jury to disregard it.

Defendants also objected to the assistant district attorney's comments that: Dekeyser may have felt coerced into giving Carraway's attorneys his conflicting statement; Carraway told the FBI that she did not know Charles Hall; Dekeyser's statement that he drove 75 m.p.h. from Kinston to Goldsboro on the night of the murder was a declaration against interest; and defendant's theory of the case was that the murder occurred after an attempted robbery.

It is well settled that the arguments of counsel must be left largely to the discretion of the trial court. The trial court has a duty, upon objection, to censure the remarks not warranted by the law or the evidence. *State v. Covington*, 290 N.C. at 328, 226 S.E. 2d at 640. The court's ruling thereon will not be disturbed in the absence of a gross abuse of discretion. *State v. Monk*, 286 N.C. 509, 212 S.E. 2d 125 (1975).

A review of the record indicates that all of these contested statements have a basis in the evidence presented at trial. Further, the trial court twice within the State's argument reminded the jury that they should be guided by their own recollection of the evidence and not by counsel's rendition. We therefore hold that the trial judge did not abuse his discretion in overruling defendants' objection to the prosecutor's argument.

[27] Defendant Rogers next contends that the trial court erred in sustaining the State's objection to a rhetorical question he posed to the jury in his closing argument. After highlighting the

contradictions and inconsistencies in Dekeyser's testimony, Rogers' counsel asked: "Would you like to be convicted on his testimony?" As previously set forth, counsel should be allowed wide latitude in arguing his case to the jury. Yet, "[w]hether counsel abuses this privilege is a matter ordinarily left to the sound discretion of the trial judge." *Id.* We hold that the trial judge did not abuse his discretion in sustaining the objection. The trial judge properly exercised his discretion by preventing defense counsel from suggesting that the jurors reach their verdict by placing themselves in defendant Rogers' position, rather than on deciding the case from the facts and inferences which could be reasonably drawn from the evidence.

F. *Jury Instructions*

Together defendants have presented nine assignments of error dealing with the trial court's instructions to the jury in the guilt-innocence phase of their trial. They failed, however, to voice at trial any objection to the court's final jury instructions. Under N.C. R. App. P. 10(b)(2), defendants have therefore waived their right to assign error in the instructions. Consequently, they are entitled to relief only if one of their alleged errors amounted to "plain error" as that term has been defined in *State v. Odom*, 307 N.C. 655, 300 S.E. 2d 375 (1983), and subsequent cases. *See State v. Hamlet*, 312 N.C. 162, 321 S.E. 2d 837. Our careful review of the record reveals that no such error was committed in this case.

II. FAIR SENTENCING ISSUES

[28] Each defendant was convicted of first degree murder and assault with a deadly weapon with intent to kill. Defendant Carraway raises three assignments of error with regard to the sentence she received for her assault conviction. Carraway argues that the court erred in finding the following factors in aggravation:

27. . . . The defendant although not charged with the crime of conspiracy, entered in a conspiracy to aid and abet another person in the commission of a felony.

28. Although, the defendant has not been charged with perjury or convicted of it, the jury by its verdict found her testimony of self-defense was unbelievable and thereby, de-

termined that she committed perjury. The Court likewise finds she committed perjury.

In *State v. Thompson*, 310 N.C. 209, 227, 311 S.E. 2d 866, 876 (1984), this Court held that

nothing in our Fair Sentencing Act specifically precludes a finding of perjury as an aggravating factor to be weighed in considering the sentence to be imposed upon a defendant, provided, of course, the finding meets the requirements of the statute; however, in view of some of the potential dangers inherent in this particular factor and also of its peculiar nature, a trial judge should exercise extreme caution in this area and should refrain from finding perjury as an aggravating factor except in the most extreme case.

It is true that Carraway's testimony conflicts with the State's version of the facts as revealed through its witnesses and the physical evidence produced at trial. However, her testimony is not intrinsically inconsistent, a usual characteristic of obviously perjured testimony. Moreover, the most damaging evidence against her was offered by Jeffrey Dekeyser, a witness whose own testimony reeked of inconsistencies, contradictions, and recantations. We cannot speculate as to why the jury chose to believe this witness over the defendant but its refusal to accept her version of the facts in light of Dekeyser's testimony does not compel the conclusion that Carraway's testimony was perjured. We believe that under *Thompson* the witness's testimony must be undeniably perjured to constitute an "extreme case" and to warrant a finding of this aggravating factor. Otherwise, every convicted defendant who has testified in his own defense may be treated as a perjurer, a result previously found unacceptable by this Court. *Id.* at 226, 311 S.E. 2d at 876. *See also United States v. Moore*, 484 F. 2d 1284, 1287 (4th Cir. 1973). We hold that the court's finding of perjury in this case is not supported by a preponderance of the evidence and repeat our admonishment that judges exercise extreme caution in this area.

We further hold that the "conspiracy to aid and abet" aggravating factor was not supported by a preponderance of the evidence. A criminal conspiracy is an agreement between two or more persons to do an unlawful act or to do a lawful act in an

unlawful way. *State v. Bindyke*, 288 N.C. 608, 220 S.E. 2d 521 (1975).

In the present case, there is simply no evidence that the defendants conspired to carry out the crimes for which they were convicted. Basically, the presence of a conspiracy between defendants is only an inference which can be drawn from the commission of the crimes themselves. This inference does not support this factor by a preponderance of the evidence.

As a result of the trial court's error in finding these aggravating factors, we award defendant Carraway a new sentencing hearing for her assault with a deadly weapon with intent to kill conviction.

III. CAPITAL SENTENCING ISSUES

Defendant Rogers brings forward several assignments of error which deal with alleged errors committed during the sentencing phase of his first degree murder conviction. Defendant Carraway was given the mandatory life sentence and therefore has no similar assignments of error.

A. *Jury Argument*

[29] Defendant Rogers first contends that the trial court committed prejudicial error in failing to control the State's argument to the jury during the capital sentencing portion of the trial. However, Rogers failed to object in court to the argument. As stated in *State v. Johnson*, 298 N.C. 355, 369, 259 S.E. 2d 752, 761 (1979):

> In capital cases, . . . an appellate court may review the prosecution's argument, even though defendant raised no objection at trial, but the impropriety of the argument must be gross indeed in order for this Court to hold that a trial judge abused his discretion in not recognizing and correcting *ex mero motu* an argument which defense counsel apparently did not believe was prejudicial when he heard it.

In the present case, defendant's exceptions in general deal with the State's continued argument that Edwards, not Hall, was the intended murder victim. This idea was again stressed at this time because the "course of conduct" aggravating circumstance would be submitted to the jury. Rogers further objects to the

prosecutor's references to biblical passages that encourage Christians to obey the law. We note that defendant Rogers also used the Bible and its teachings to argue against the imposition of the death penalty.

We have reviewed the State's argument and even assuming arguendo that the statements singled out by defendant were improper, the impropriety was clearly not so gross as to require us to hold that the trial court abused its discretion in not recognizing the error and correcting it on its own motion. These assignments are overruled.

### B.  *Aggravating Circumstance*

[30]  Defendant Rogers also claims that the trial court improperly submitted the "course of conduct" aggravating circumstance to the jury. N.C.G.S. § 15A-2000(e)(11) contains the following aggravating circumstance: "The murder for which the defendant stands convicted was part of a course of conduct in which the defendant engaged and which included the commission by the defendant of other crimes of violence against another person or persons." Defendant Rogers argues that there was no evidence to support the submission of this circumstance. N.C.G.S. § 15A-2000 (d)(2) also requires this Court in a capital case to review the record and determine whether the record supports the jury's finding of any aggravating circumstance.

As previously set forth, the State presented substantial evidence that after killing Charles Hall, defendant Rogers fired his weapon at George Edwards, intending to kill him. The jury, by returning guilty verdicts, found beyond a reasonable doubt that Rogers had committed Hall's murder and this assault against Edwards. We therefore hold that the trial court properly submitted this aggravating circumstance to the jury for its consideration and properly denied Rogers' later motion to set aside the jury's finding of this aggravating circumstance.

### C.  *Statutory Review Required by N.C.G.S.* § *15A-2000(d)(2)*

[31]  Having found no prejudicial error by the trial court in the guilt-innocence or sentencing phases in the first degree murder case, we now undertake the review imposed upon this Court by N.C.G.S. § 15A-2000(d)(2). This statute directs us to review the record in a capital case and to determine: (1) whether the record

supports the jury's findings of any aggravating circumstance or circumstances upon which the sentencing court based its death sentence; (2) whether the sentence was imposed under the influence of passion, prejudice or any other arbitrary factor; and (3) whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant. We have previously concluded that the evidence supports the aggravating circumstance found by the jury. Furthermore, we have searched the record and have failed to find any evidence indicating that the sentence was the product of passion, prejudice or any other arbitrary factor.

To determine whether the sentence of death is excessive or disproportionate when considering the crime and the defendant, we review all of the cases in the "pool" of similar cases for comparison. *State v. Williams*, 308 N.C. 47, 301 S.E. 2d 335, *cert. denied*, 464 U.S. 865, 78 L.Ed. 2d 177 (1983). The purpose of our review is to eliminate " 'the possibility that a person will be sentenced to die by the action of an aberrant jury.' *Greg v. Georgia*, 428 U.S. 153, 206 (1976)." *Id.* at 82, 301 S.E. 2d at 356. We reiterate our feeling that "the responsibility placed upon us by N.C.G.S. § 15A-2000(d)(2) to be as serious as any responsibility placed upon an appellate court." *State v. Jackson*, 309 N.C. 26, 46, 305 S.E. 2d 703, 717 (1983).

The proportionality review pool currently contains approximately twenty-three death sentence cases and seventy-six life sentence cases. Our review of these cases compels the finding that although the crime committed by this defendant was a senseless, unprovoked killing, "it does not rise to the level of those murders in which we have approved the death sentence upon proportionality review." *Id. E.g., State v. Craig & Anthony*, 308 N.C. 446, 302 S.E. 2d 740, *cert. denied*, 464 U.S. 908, 78 L.Ed. 2d 247 (1983) (defendants took turns stabbing heavily intoxicated, utterly defenseless, woman inflicting thirty-seven wounds as she begged for her life); *State v. McDougall*, 308 N.C. 1, 301 S.E. 2d 308, *cert. denied*, 464 U.S. 865, 78 L.Ed. 2d 173 (1983) (defendant kidnapped and attacked victim and her roommate, ultimately stabbing victim twenty-two times with a butcher knife); *State v. Brown*, 306 N.C. 151, 293 S.E. 2d 569 (defendant with no apparent motive fatally stabbed a young mother and her child, extensively mutilating their bodies); and *State v. Pinch*, 306 N.C. 1, 292 S.E. 2d 203, *cert.*

*denied*, 459 U.S. 1056, 74 L.Ed. 2d 622 (1982) (at motorcycle clubhouse defendant shot to death two men, one of whom he had never seen before, because he "didn't have any use for people like that").

Furthermore, it is particularly instructive to compare this case with those cases where the death sentence was upheld and N.C.G.S. § 15A-2000(e)(11) was the only aggravating circumstance found by the jury. This "course of conduct" circumstance was the sole factor upon which the jury recommended the death penalty in *State v. Williams*, 305 N.C. 656, 292 S.E. 2d 243, *cert. denied*, 459 U.S. 1056, 74 L.Ed. 2d 622 (1982), and *State v. Noland*, 312 N.C. 1, 320 S.E. 2d 642. In *Williams*, defendant deliberately stalked two lone employees of business establishments in isolated areas during the early morning hours, robbed them at gunpoint, and shot them at very close range with a shotgun before fleeing with the money. *Id.* at 690, 292 S.E. 2d at 263. In *Noland*, defendant warned his estranged wife that if she did not come back to him he would kill her sister first and then her father and mother. Thereafter when his wife did not return to him, defendant entered his wife's sister's home and shot her in the back of the head as she huddled helplessly behind the laundry room door. Defendant then walked across the street into his wife's parents' home, fatally shot her father in the left eye while he slept, and wounded her mother. *Id.* at 4-6, 320 S.E. 2d at 645-46.

Although any murder is a horrendous and reprehensible act, the slaying in this case does not contain the viciousness and the cruelty present in these cases. Rogers' crime on the other hand is more in line with those cases in which the jury has recommended a sentence of life imprisonment. *Cf. State v. Adcock*, 310 N.C. 1, 310 S.E. 2d 587 (defendant follows estranged wife from work and shoots her at the bottom of an exit ramp — same aggravating circumstance); and *State v. Bare*, 309 N.C. 122, 305 S.E. 2d 513 (1983) (defendant orders death of allegedly double-crossing drug dealer — different aggravating circumstances). *See also State v. Hamlet*, 312 N.C. 162, 321 S.E. 2d 837 (defendant shoots fellow drug dealer in Club Ebony after prior drug-related argument — vacated by this Court due to insufficient evidence to support the sole aggravating factor submitted to the jury; life sentence imposed).

We therefore hold as a matter of law that the death sentence imposed in this case is excessive and disproportionate. Defendant Rogers' death sentence is hereby vacated and defendant is sentenced to imprisonment for the remainder of his natural life. Defendant is entitled to credit for days spent in confinement prior to the date of this judgment.

### IV.  POST TRIAL MOTIONS

[32]  In their final assignments of error, defendant Rogers excepts to the signing and entry of the judgments against him, and defendant Carraway excepts to the trial court's refusal to set aside the verdict as being contrary to the weight of the evidence. A motion to set aside the jury's verdict lies within the discretion of the trial judge and is not reviewable absent a showing of abuse of that discretion. *State v. Wilson*, 313 N.C. 516, 330 S.E. 2d 450 (1985). Since the evidence was sufficient to support the jury's verdict, we hold that the trial court did not abuse its discretion in denying Carraway's motion. Furthermore, defendant Rogers' exception to the entry of judgment based on the same errors heretofore discussed is also without merit. We have found no prejudicial error in the guilt phase of either charge against him and he has failed to assign error to the sentence imposed against him for his assault conviction. Even though we have vacated his death sentence for proportionality reasons, the trial judge did not err by entering that judgment because he was bound to follow the jury's recommendation. N.C.G.S. § 15A-2000 (1983).

No. 83CRS15013—Rogers—first degree murder—no error in guilt phase; death sentence vacated and sentence of life imprisonment imposed.

No. 83CRS15013—Rogers—assault with deadly weapon with intent to kill—no error.

No. 83CRS15014—Carraway—first degree murder—no error.

No. 83CRS15014—Carraway—assault with a deadly weapon with intent to kill—new sentencing hearing.